# COUNTY OF ORANGE,

#### AT THE

## MARCH TERM, 1868.

PRESENT :

Hon. JAMES BARRETT,
Hon. WILLIAM C. WILSON, } Assistant Judges.
Hon. JOHN PROUT,

---

## Thomas Johnson *v.* Abijah Howard, and Town of Thetford, Trustee.

### *Tax.    Contract.    Trustee Process.*

Where the town summoned as trustee, was owing the defendant $112 for professional services, and at the same time there was a town tax against the defendant, unpaid, of $131.88, it was *held* that the town was not entitled to apply said tax upon said debt and thus avoid being held under the trustee process.

A town tax is not a contract express or implied.

As there was no perfected application of the debt upon the tax between the selectmen and the defendant, there were no equitable considerations in favor of the town.

TRUSTEE PROCESS, which was referred to a commissioner to take the disclosure of the trustee and other evidence and report, as provided by law.  The commissioner found the following facts :

Johnson *v.* Howard and trustee.

" Hiram D. Morey was elected first constable of the town of Thetford at the annual March meeting in 1865. He gave bonds and received and receipted for the rate-bill (and warrant) assessed on the list of 1865, and the town has ever since held and now holds that receipt. On said rate-bill was a tax against the defendant of $131.88, and there were also taxes against the defendant and other persons jointly thereon. Morey removed from this state between the 1st and 15th of October, 1865, but retained the rate-bill in his possession until December 12, 1865, when he gave it up. Solon K. Berry was elected first constable of Thetford at a special meeting held on the 16th of December, 1865, and as such received and receipted for said rate-bill on the 25th of December, 1865. W. D. Ladd, Quincy Garey and M. N. Russ were selectmen of Thetford for the year 1865, and said Ladd was town treasurer. The writ in this case was served on the trustee December 11, 1865. About the time Morey removed from this state, he drew from said rate-bill a list of the names of delinquent tax-payers and the amount of their tax, and left the same with said Ladd to collect for him and account to him for ; and among the names on said list was that of the defendant, with the amount of his town tax of $131.88. Said Morey gave Ladd no authority to receive payment of any of said taxes so left with him, except in money or town orders, nor did he authorize Ladd or any of the selectmen to make any arrangement with the defendant for the payment of said town tax in whole or in part by applying thereon what might be due the defendant from the town, as hereinafter stated, nor did he know of any such arrangement. About the 1st of October, after Ladd had received said list, he called upon the defendant for payment of said tax. In their conversation it was arranged between Ladd and the defendant, that the selectmen should set a day, and notify the defendant thereof, to meet and adjust an account which the defendant then claimed against the town, and Ladd then consented so far as he was concerned, that the amount which might be found due from the town to the defendant, might be applied toward the payment of said tax. The other selectmen sanctioned this arrangement of Ladd's, and upon the 2d day of December, 1865, the selectmen and the defendant met at the town clerk's office to adjust the defendant's account and make the application. The defendant then presented his account, it being mostly for professional services as an attorney, against said town. To some items of the account the selectmen objected, and claimed that the town should have more credits than appeared. The defendant claimed a balance of about $119, but the account was not then settled, and the selectmen took a copy of

the account for the purpose of making inquiries. At this meeting it was expected that any balance which might be found due the defendant, would be applied on said tax. Nothing more was said or done between the selectmen and the defendant about the matter, until after the service of this writ and the return-day before the justice. On the return-day of said writ, the selectmen and the defendant appeared at the place of trial named in said writ, supposing said writ to be returnable at 10 o'clock *a. m.* After the expiration of two hours, the plaintiff not appearing, the selectmen and the defendant adjusted the defendant's account, and agreed upon a balance of $112 as due the defendant, and an order was drawn by the selectmen for that amount in favor of the defendant, with the expectation that the same was to be taken by Ladd to apply on the tax; but, finding out that the time set for trial in the suit was one o'clock in the afternoon, and that hour not having arrived, said order was destroyed and treated by the selectmen and the defendant as void and of no effect. Neither the selectmen nor the defendant ever understood their arrangement as of binding effect previous to the service of this writ, but merely as an understanding that, if they should adjust the balance due the defendant, then such balance should be applied in payment of said tax."

Upon the report of the commissioner, the county court, at the June term, 1867, WILSON, J., presiding, rendered judgment *pro forma* that the trustee be discharged, to which the plaintiff excepted.

*A. M. Dickey* and *S. M. Gleason*, for the plaintiff, claimed that the arrangement between the defendant and the selectmen was conditional, to have effect at some future time if the conditions were all performed, and was not a settlement. The tax of $131.88 is not a demand which can be brought in as an offset, to defeat this action. The demand, to have that effect, must be founded on contract express or implied, as between the trustee and the principal defendant. Gen. Sts., ch. 36, § 52.

The collector of taxes has full power to collect his taxes, and being responsible for their non-collection, he only has any control over such taxes, and neither the selectmen nor any other town officer can have any control over the taxes in a collector's bill.

The town of Thetford still holds the collector's receipt for this tax-bill, and said collector is still holden for the payment of the tax.

*C. W. Clarke*, for the trustee, claimed that "whatever the laws order any one to pay becomes instantly a debt which he hath beforehand contracted to discharge." 3 Bl. Com., 160 ; *Sawyer et al.* v. *Vilas*, 19 Vt., 43. The facts reported create a subsisting agreement between the selectmen and the defendant at the time of the service of the trustee process, that whatever was due should apply upon the tax. The trustee process is an equitable action, and such technical objections as will prevent the court from doing exact justice, ought not to be admitted. When the amount was ascertained, the law made the application relate back to the time of the agreement to apply. *Lynde* v. *Wright et al.*, 1 Aik., 383.

The opinion of the court was delivered by

BARRETT, J. Prior to and at the time the process in this case was served on the town as trustee, said town was owing the defendant the sum of $112 for professional services theretofore rendered. At the same time there was a town tax against the defendant, unpaid, of $131.88. It is claimed that, by virtue of section 52 of chapter 36 of the General Statutes, the town is entitled to apply said tax upon said debt, and, as the tax is larger than the debt, it can not be chargeable as trustee.

Whether it can be so applied, depends upon determining whether the tax is a *contract*, express or implied. It certainly does not partake of the ordinary qualities of a contract, nor in its origin, and creation, and mode of enforcement, answer to any technical definition or common idea of a contract. A tax does not grow out of any transactions between the parties. It is a duty imposed by arbitrary law, predicated upon the relations of the individual to the body politic. It does not partake of the character of a judgment. That is the result of personal acts, and relations as to private rights of person and property, ascertained and adjudged in due course of judicial proceedings. The only resemblance of a tax to a judgment is that it is for a sum certain, fixed by law, and may be enforced by final compulsory process against the property and body of the person taxed.

In *Webster* v. *Seymour et al.*, 8 Vt., 135, it is expressly held not to be " a debt or contract."

There is nothing in the character of a tax, from which any feature of an implied contract can arise. A tax can not be enforced by suit in the name or behalf of the town. In certain cases the *collector* may reach property in satisfaction of a tax by trustee process. The object of that is, not to establish the tax by a judgment, but only a process by which the rights and credits in action of the party taxed may be reached, for want of property or body on which to fasten by the warrant. The case, therefore, does not fall within the terms of that section.

Nor is there any ground for extending its operation for equitable considerations. There are no equitable considerations in favor of the town. The law provides for assessing the tax against the individual in spite of himself and of any opposition he may make to it. It provides ample, and the most inexorable, means for enforcing its payment or satisfaction. The law confers no further right, nor does it contemplate any. The town is in no danger of suffering loss by the non-payment of the tax, or by reason of inability to collect it, beyond what is incident to the subject, in view of the means specifically provided for enforcing it. In this particular case there is nothing shown why the tax may not be collected upon the tax-bill and warrant, either by the voluntary payment of the defendant or by distress of property. So that, in no view, either general, as to the subject itself, or particular, as to the case in hand, is there any ground for invoking equitable considerations in favor of the town.

To hold in this case as is claimed for the trustee, would open the way to supposable and probable complications that would tax professional and judicial wit to solve, to an extent that would not be likely to be compensated by any beneficial results that would be realized therefrom. On the other hand, to hold as we do, leaves the town armed with all the means intended by the law to be used for making the tax available, and leaves the debt due to the defendant available to the creditor for the satisfaction of his debt, by means provided by the law for that express purpose.

The equities all look in this direction, and find full countenance in the express provisions of the law.

This view of this aspect of the case removes the only ground upon which the other view can be rested with any plausibility. Inasmuch as there was no perfected application of the debt upon the tax, we have no reason arising from equitable considerations, to give what passed between the selectmen and the defendant operation beyond its strictly legal force.

We make no intimation of views as to the authority of the selectmen, as such, to make such settlement of taxes.

A case in Windsor county, recently decided, in which PROUT, J., delivered the opinion, involved principles that would seem to bear strongly on that subject.

The judgment is reversed, and the trustee adjudged chargeable for said $112.