Scofield *et al. vs.* Perkerson *et al.*

[Judges McCay and Montgomery being disqualified from presiding in the two following cases, the fact was certified to the Governor, who commissioned the Honorable C. D. McCutchen and the Honorable Hugh Buchanan, Judges of the Superior Court, *pro hac vice*, Judges of the Supreme Court.]

L. SCOFIELD *et al.*, plaintiffs in error, *vs.* A. M. PERKERSON, deputy sheriff, defendant in error.

MARTIN J. HINTON *et al.*, plaintiffs in error, *vs.* A. M. PERKERSON, deputy sheriff, *et al.*, defendants in error.

1. The issuing of executions by the Comptroller General, to collect the public revenue due to the State, is the act of the Executive department of the Government; and the Courts have no power to prescribe the kind or sufficiency of the evidence which shall be necessary to authorize the process of execution to issue against defaulting officers or agents, or to restrain that department in pursuing this course. (R.)
2. The remedy against the superintendent and the other officers of the Western and Atlantic Railroad is the same as against tax collectors and receivers. (R.)

Injunction. Execution against public officer. Judicial interference. Constitutional law. Taxes. Before Judge HOPKINS. Fulton County. At Chambers. October 14th, 1872.

These cases were argued together. The allegations contained in the bills as originally filed will be found substantially set forth in the report of the two preceding cases. The decision of the Chancellor, refusing the injunctions upon the bills as originally presented to him, having been affirmed by the Supreme Court, amendments and an affidavit were filed in each case and second applications made for injunction.

The bill filed by Lewis Scofield and Varney A. Gaskill was amended substantially as follows, to-wit:

Complainants aver that the Committee of the Legislature upon the management and government of the Western and Atlantic Railroad, in making their investigation, heard testimony *ex parte;* that Foster Blodgett and his securities were not present nor invited to be present; that they did not know

Scofield *et al. vs.* Perkerson *et al.*

when many of the witnesses would be examined, and had no opportunity either in person or by counsel to be present and cross-examine the witnesses sworn before the committee; that they had no opportunity to rebut or to explain the evidence of the witnesses sworn, nor to impeach them, some of whom complainants aver, could have been successfully impeached; that said committee, sitting in their rooms at the capitol, sent for such persons as they wanted and asked them such questions as they pleased; that they did not proceed upon a full and fair investigation, but condemned said Blodgett and his sureties to pay the sum stated in their account, certified to the Comptroller General without a hearing; that when said committee certified to the Comptroller General the account aforesaid and directed said officer to issue execution, there was no investigation nor examination by the Comptroller General into the truth of the matters stated in said committee's report; that said report was not verified by the books and records in the office of the Comptroller General, nor by any other books or records whatsoever; that the Comptroller General did not know or pretend to know whether said report was in any respect true; that he had no opinion and formed no judgment thereon; that he did not satisfy himself of the correctness of the committee's report by inspection of the books and accounts of the Western and Atlantic Railroad; that he did not mean to, and did not, in fact, adopt it as his own; that he did not cause the true amount due by the said superintendent to be ascertained from said books as required by law; that, on the contrary, said Comptroller General, when asked to issue said execution, hesitated, and at first determined not to issue any execution unless directed to do so by his Excellency the Governor, and called at the office of the Governor for orders, and finding the Governor absent, he was assured by one of the Secretaries in the Executive office that an order would be issued by the Governor on his return; that the Comptroller General consulted the Attorney General of the State before issuing the execution, and asked to be informed if it was

his right or duty to issue it upon the report of said committee alone, and that the Attorney General being very much engaged, and not having time to investigate the question fully, told the Comptroller General to issue the execution, and that if there were any objections to it the defendants in *fi. fa.* might present their objections thereafter.

Complainants further aver that the Comptroller General, after yielding his doubts and scruples as to the issuing of the said execution, refused to issue the same upon his own knowledge, judgment or investigation, but desiring that it should appear (as the truth was) to be issued upon the report of the committee, he required that the execution should recite the report of said committee as the authority for the same; that it was the distinct purpose of the Comptroller General in making said recitals, in his execution, to disclaim all intention, purpose or pretext of acting upon his own judgment, or after making any investigation whatever.

Complainants further aver that the items making up the account certified by the committee to the Comptroller General do not appear on the books, records or papers of the Western and Atlantic Railroad, nor of the Comptroller General's office, but were made up from *ex parte*, oral and written testimony, and that in arriving at said items said committee heard evidence, and found facts therefrom and pronounced judgment thereon as a Court, with the exception that complainants and their principal were not present, nor allowed to be present, nor their side of the case heard, all of which acts and doings of said committee were illegal and void so far as the same were used as the foundation of an execution against complainants.

Complainants aver that the principal item in said account, to-wit: the item of $15,000 for old iron is entirely erroneous and unjust, because the notes given by the Scofield Rolling Mill Company for said sum were paid to the Western and Atlantic Railroad in new iron and in rerolling old iron; that outside of this transaction there is not, and never was, any foundation for said item of $15,000; that the other items of

said account are not on the books of the late superintendent nor on the books of the Western and Atlantic Railroad, nor of the Comptroller General, nor of the Treasurer of the State; that before any execution could issue therefor complainants are entitled to be heard, to introduce testimony, to cross-examine, and, if necessary, to impeach the witnesses against them; that complainants, in good faith, deny the fairness and truth of all of the items of said account, and desire to have the same fairly and correctly adjudicated in the Courts of the country.

Complainants aver that when their application for injunction was made upon their original bill some of the facts aforesaid were not stated, because unknown to them, and others were not deemed material until the decision of the Court thereon; that they did not know the circumstances under which the Comptroller General acted in issuing the execution, nor that the books and records of the Western and Atlantic Railroad and of the Comptroller General's and Treasurer's offices did not show said account to be true; that they did not know upon whose testimony nor upon what facts said accounts were based.

Complainants aver that if said execution is allowed to proceed they will be without remedy at law, because said Perkerson will not be liable as a trespasser; they cannot be reimbursed out of the bond of the Comptroller General, because they are advised that they have no right to sue on the bond of the Comptroller General (which is only for $20,000,) to recover damages for a trespass like the one with which complainants are threatened, and if entitled to an action on said bond there are other parties whose bill is filed in this Court, whose claim on the bond added to complainants' will be more than double the penal sum of said bond; that the Comptroller General has but little taxable property in his own right, his whole estate being, according to the tax books, less than $10,000, out of which a homestead of $3,000 in specie may be reserved, and that in case of death his estate

Scofield *et al. vs.* Perkerson *et al.*

would be subject to a claim for dower and year's support for his family.

Complainants, submitting the facts aforesaid in addition to those contained in their original bill, renew their prayer for injunction heretofore made, and pray that the same may now be granted.

The defendant showed for cause why the injunction should not be granted, the following reasons, accompanied by the affidavit of the Honorable Milton A. Candler.

1st. Said bill is defective because H. I. Kimball, John Rice and H. O. Hoyt, the other defendants to the *fi. fa.*, are not parties to said bill.

2d. Because said Comptroller General is not a party to said bill.

3d. Because by reason of the refusal of the former injunction this matter is *res adjudicata.*

4th. Because if not *res adjudicata* no sufficient reason is given for not having made the bill perfect in the beginning, nor any sufficient excuse given for the ignorance of the pretended newly discovered facts.

5th. If allowed at all it can be only as to the $15,000 item, because there is no denial of the justness of the other claims.

6th. Because this *fi. fa.* is a proceeding to recover part of the State's revenue from the securities of one of its bonded, monetary officers, and there can be no judicial interference therewith.

7th. There is no denial as to part of the items. If there is any remedy at the hands of a Court, illegality is that remedy, and in illegality all not denied must be paid.

"GEORGIA—FULTON COUNTY.

Personally appeared before the attesting officer in and for said county, Milton A. Candler, who being duly sworn deposes and says, he was and is the chairman of the joint committee of the General Assembly, upon the management of the Western and Atlantic Railroad; the $15,000 item on

the account against Blodgett as superintendent of said road was made up from the following evidence, that is, the evidence touching the matter in pages 90, 92, 94, 95 and 98 of the evidence taken before said committee and published by order of the General Assembly, together with pass-bills of the Western and Atlantic Railroad, and receipts of the Rolling Mill Company, and the books of the treasurer of the Western and Atlantic Railroad. From the treasurer's books it appeared that the iron delivered after the making of said note was paid for in cash out of the Western and Atlantic Railroad treasury, and not by said note, and the books of the treasurer did not show that said note was ever in the hands of the treasurer, and the treasurer's books corresponded with the said pass-bills and receipts, and the auditor's books also showed said amounts audited to said Scofield Rolling Mill Company. Lewis Scofield, defendant, was president of said company, and is the same person examined before said committee. The book-keeper of the committee is absent from the city, and it may be that some pages in said printed evidence on this subject are unintentionally omitted. But deponent believes none are omitted. But it is well to observe that said printed evidence is the oral evidence taken before the committee, with an occasional paper copy, as shown in this instance, the great body of the evidence, books, pass-bills, etc., are not published. The above is intended to show only the manner of arriving at the correct sums, and not to demonstrate the correctness of said conclusions.

(Signed,)                    "MILTON A. CANDLER."

"Sworn to and subscribed before me this 11th of October, 1872.

(Signed)   "W. M. BUTT, J. P."

The bill filed by Martin J. Hinton, Henry O. Hoyt, James L. Mathewson and Ephriam Tweedy was amended, substantially, as the bill of Lewis Scofield *et al.* Madison Bell, the Comptroller General, was made a party defendant. Substantially, the same cause was shown why an injunction should

not issue, accompanied by the following affidavit from the Honorable Milton A. Candler:

"GEORGIA—FULTON COUNTY:

"Personally appeared before me, the attesting officer, in and for said county, Milton A. Candler, who being duly sworn, deposeth and says, that he was, and still is, the chairman of the committee on the management of the Western and Atlantic Railroad; that said committee did, before it sat, publish a notice of its intended sitting and its purposes, as stated in the resolution appointing them; this was published in the 'Atlanta Constitution' on the 14th of December, 1871, and until the 3d of January, 1872, the day the committee began its sittings. Upon its sitting, subpœnas were served upon the officers of the Western and Atlantic Railroad, requiring them to produce such books and papers of the Western and Atlantic Railroad which they might have. Foster Blodgett was so served and, in response, came before the committee and produced certain papers, and knew the objects of the sittings of the committee, and was in Atlanta for some time while the committee was sitting. He testified before the committee about some other matter. Neither of said complainants, (Hinton and Mathewson,) nor their said attorneys, either before or since the issuing of said *fi. fa.*, applied to said committee for an inspection of any books or papers. Said Hinton was summoned before said committee as a witness, and gave evidence to a matter different from this. Hinton resided in Atlanta all the time, and Mathewson resided in Fulton county. After demand, but before *fi. fa.* was issued, said Hinton showed to deponent a letter, which he said he had received from Foster Blodgett, in which all the items of said exhibit were commented upon, in which Blodgett admitted the correctness of the items as to the post office money, $2,893 57, and undertook to explain away the other items. The account is made up partly by an examination of the books of the Western and Atlantic Railroad, and from passbills and other papers and extraneous evidence taken before

the committee. For instance, in Foster Blodgett's own handwriting, on his own treasurer's book, he was debited as follows: W. L. Avery, for purchase of engine New York, 3500, and then the figures erased, making it appear thus, ———. This looking suspicious, we examined into the matter and ascertained that A. S. Finney, disbursing agent of the Brunswick and Albany Railroad Company, for the engine New York, drew a draft on W. L. Avery, and that Blodgett received the money on said draft and never charged it to himself, except in the suspicious manner above stated, and then erased the figures; the Western and Atlantic Railroad did have such an engine, and it was sold to the Brunswick and Albany Railroad Company. It is true that said indebtedness is not taken from the books, but is ascertained from what does appear upon the books, and evidence taken outside of the books and papers of the Western and Atlantic Railroad, such as pass-bills, etc. For instance, in said letter of Blodgett, he explained the items by saying he had paid out the money for iron, but the books and pass-bills show that he paid for the iron out of the treasury, and not out of funds in his hands, he receiving credit, as treasurer, for these payments, without having ever charged himself with the receipt of said funds. The book-keeper of the committee being absent from the city, it may be that some pass-bills and papers are omitted in this affidavit which bear on these questions. This is intended to show only the manner of getting at the facts, and not the correctness of the conclusions. In all cases, every person was examined whom we had reason to believe knew anything about the facts. It is proper to observe that, with slight exceptions, the printed evidence contains none of the evidence except the oral evidence taken down.

(Signed)          " MILTON A. CANDLER.

" Sworn to before me this
October 8th, 1872.

(Signed)    " W. H. PATTERSON, Notary Public."

The Chancellor refused an injunction in each of the aforesaid cases, and complainants excepted and assign said rulings as error.

B. H. HILL & SONS; D. F. & W. R. HAMMOND; GARTRELL & STEPHENS; PEEPLES & HOWELL; A. B. CULBERSON, for plaintiffs in error.

N. J. HAMMOND, Attorney General; J. T. GLENN, Solicitor General, for defendants.

WARNER, Chief Justice.

When these cases were before this Court during the present term, it was held and decided, " that on the abolition of the offices of the Western and Atlantic Railroad, the Comptroller General became the proper custodian of the books and records of the road, and the duty of causing the true amount due by defaulting officers of the road to be ascertained, devolved upon him; that the Legislature has authority to appoint a committee of their own body, as ministerial agents, to audit and state the accounts of the officers and agents of the Western and Atlantic Railroad. Where such statement shows an officer or agent in default, and is transmitted by the committee to the Comptroller General, and he thereupon issues executions against the defaulting officer and his sureties, this Court will presume that he satisfied himself of the correctness of the committee's report by inspection of the books and accounts of the Western and Atlantic Railroad, and adopted it as his own; that the Courts will not entertain jurisdiction to enjoin such execution on the ground that there is a suit pending at the instance of the State against the defaulting agent and their securities on their bond, or on the ground that the amount for which the agent is a defaulter was fraudulently used and embezzled by him. After the judgment of this Court had been rendered, the complainants amended their bills and again applied for injunctions to restrain the collection of the executions issued by the Comptroller General,

which were refused by the Court, and the complainants excepted.

The averments in the amended bills go behind the issuing of the executions by the Comptroller General and relate to matters which transpired prior to his action in issuing them for the purpose of attacking the validity thereof, and one of the complainants alleges that a part of one of the executions is not due. The issuing of the executions by the Comptroller General to collect the public revenue due to the State, was the act of the Executive department of the State government, and the Courts have no power or authority to compel that department, by *mandamus* or other judicial process, to issue executions for the collection of the public revenue of the State, or to *restrain* that department of the government from doing so, or to prescribe the kind or sufficiency of the evidence which shall be necessary to authorize it to issue such executions against the defaulting officers and agents of the government—that is a matter which belongs to the Executive department of the government, exclusively. All debtors to the Western and Atlantic Railroad were debtors to the State or public: Code, 981. The remedy against the superintendent and other officers of the road is the same as against tax collectors or receivers: Code, 991.

The Act of 1858, from which the provisions in the Code are taken, is still more explicit upon this point. The 7th section of that Act declares, " that debtors to said road shall stand upon the same footing, as to liability and accountability, as collectors of taxes are now liable by law, and no judicial interference shall be had, held or entertained to stop or suspend the collection of a *fi. fa.*, when issued according to the terms and provisions of this Act. But the Governor, for the time being, may and shall, upon affidavit filed as to the amount really due, upon affiant fully paying the sum admitted to be due, stating all the facts in his affidavit, and therein shewing why he has paid all that is really due, to suspend the collection of the residue until the meeting of the next Legislature, to whom he shall submit the matter for their ac-

tion." The 6th section of the Act provides for the issuing executions against the defaulting officers of the road by the Comptroller General. The 8th section of that Act declares, " that it shall be *liberally* construed to effect prompt accountability and payment from debtors of the road." The 971st section of the Code declares that, " all laws heretofore enacted having a special or local application to said road, and in force at the time of the adoption of this Code, are kept in force, unless herein repealed expressly, or by implication."

Can any one doubt that it was the clear and manifest intention of the Legislature that there should not be any *judicial* interference with the collection of claims due the State by the defaulting officers of the road ? But it is said if there is not judicial interference, the complainants will be remediless. The 7th section of the Act before cited points out the remedy, which negatives the idea that it was to be by *judicial* interference. The principle is, that the State must collect her revenue for the support of government through the action of the Executive department thereof, whether derived from taxes or from her other sources of revenue, without any judicial interference therewith. The Courts will not presume that the State, in the exercise of her sovereign prerogative in the collection of her revenue, will do injustice to any of her citizens for her own benefit. The complainants, at the time they signed the official bonds of their principal, must be presumed to have done so with a full knowledge of the law applicable to their liability thereon, and as to the manner of its enforcement against them for the default of their principal. The issuing the executions by the Comptroller General in this case being the act of the Executive department of the government, having the exclusive jurisdiction over that subject matter, the Courts have no legal right, judicially, to interfere with the exercise of that jurisdiction, for the reasons alleged, either in the original bills of the complainants or in their amended bills, but, on the contrary, are expressly prohibited from doing so. Let the judgment of the Court below be affirmed in both cases.