MORGAN, TREASURER, v. THE PUEBLO & ARKANSAS VALLEY RAILROAD COMPANY.

1. The acts of June 10, 1868 (R. S., p. 134), and of March 9, 1877 (General Laws, p. 114), require that the taxes collected for the purpose of paying coupons and bonds, issued under the acts, be remitted to the treasurer of state, except taxes assessed, levied and collected

to pay principal or interest on bonds issued prior to February 1, 1868. The county treasurer is not the disbursing officer of this fund, and holders of such coupons must apply to the state treasurer for the payment thereof.

2. The revenue law requires the payment of taxes to be made in money, except that county warrants are receivable for ordinary county taxes, and for any poor tax or poor-house tax, and road warrants are receivable for road taxes.

3. The doctrine of set-off or counterclaim does not obtain in revenue matters. Those entitled to receive funds raised by taxation must present their demands to the proper officer for payment.

4. Taxes assessed and collected for county purposes cannot be diverted to other purposes than those named in the statute.

*Error to District Court of Pueblo County.*

THE case is stated in the opinion.

Mr. A. A. BRADFORD and Messrs. MARKHAM, PATTERSON and THOMAS, for plaintiff in error.

Messrs. THATCHER and GAST, for defendant in error.

BECK, C. J.   The real and personal property of the defendant in error situate in Pueblo county was regularly assessed for state, county and municipal taxes for the year 1878, said taxes amounting in the aggregate to the sum of $3,844.57, of which amount the sum of $2,031.41 had been levied for county purposes.

On the 7th day of January, 1879, the defendant in error tendered to the plaintiff, who was county treasurer of Pueblo county, in payment of the above taxes, the sum of $2,916.57 in legal tender notes of the United States, and the sum of $928 in interest coupons of the bonds of said county issued in aid of the Pueblo & Salt Lake Railway Company.

Said coupons were due at the time of the tender, and it seems that, by the terms and conditions appearing thereon, they were receivable in payment of taxes levied for county purposes.

The treasurer declined the tender, and was proceeding to enforce collection of the whole tax by sale of property, when he was enjoined by the court below from further proceeding.

It further appears that the bonds bearing the coupons mentioned in the proceeding were issued by the county commissioners of Pueblo county, in aid of the construction of said railway, on the 6th day of October, 1874, under and by virtue of the provisions of an act of the legislature of Colorado, entitled "An act relating to railroads, wagon roads and mining companies, subscriptions to stock, issue of bonds, taxes to pay interest and principal by counties, cities or towns, and for other purposes," approved June 10, 1868.   R. S. p. 134.

The Pueblo & Salt Lake Railroad Company had previously, on the 15th day of December, 1873, filed its certificate of incorporation and acceptance of the provisions of the aforesaid act of the territorial legislature.

The third section of this act makes it the duty of the county commissioners of any county issuing bonds under the act to levy and assess a special tax annually for the payment of the interest coupons as they mature, but there is no provision making such coupons receivable for county taxes; on the contrary, the special tax authorized and required to be levied for this purpose was required to be collected and remitted to the treasurer of the territory, to be by him applied to the payment of such interest.

After the admission of the state, the legislature passed an act entitled "An act relating to bonds, and interest thereon, heretofore issued by counties, cities and towns." Said act was approved March 9, 1877.   See General Laws 1877, p. 114.   It contains the same provisions for the payment of interest coupons as did the territorial statute, and it requires the taxes collected for the purpose of paying coupons and bonds to be remitted to the treasurer of the state, except taxes levied, assessed and collected to pay the principal or interest on bonds issued prior to Feb-

ruary 1, A. D. 1868, which latter taxes are to be retained by county treasurers, and paid out as provided by the act.

If, therefore, any such special tax was levied for the payment of the coupons mentioned in this case, the county treasurer of Pueblo county was not authorized, by either the territorial or the state law, to pay it out, but it became his duty, under both acts, to remit the same to the state treasurer. He was equally without power to allow a credit to the holder of such coupons, for the amount thereof, against the county taxes due from such holder.

The revenue law requires the payment of taxes to be in money, with the following exceptions, viz.: That county warrants are receivable for ordinary county taxes, and for any poor taxes or poor-house tax, and road warrants are receivable for road taxes. General Laws, sec. 2289.

If, then, the interest coupons involved in this proceeding bore an indorsement to the effect that they were receivable for county taxes, the same was in conflict with the provisions of the statute on the same subject, and therefore of no effect.

The assumption of counsel for defendant in error, that, since it was the duty of the county commissioners to levy and assess a special tax to pay these interest coupons, in equity it should have been done, and for the purposes of this case must be considered as having been done, does not affect the question.

The county treasurer is not the disbursing officer of this fund. His whole power and duty respecting this special tax is to collect it, and pay it over to the state treasurer; and holders of such coupons must apply to the latter officer for payment thereof. It is not a question of book-keeping, but of statute law, which is involved.

The doctrine of set-off or counterclaim does not obtain in revenue matters. With the exceptions specified in the statute, all taxes must be paid in money, and those en-

titled to receive funds raised by taxation must present their demands to the proper officer for payment.

In *Himmelman v. Spanagel*, 39 Cal. 389, which was an action to recover an assessment for grading a street, it was attempted to interpose a counterclaim for damages occasioned by the deposit on the premises and upon an adjacent street, of a large quantity of earth while the work of grading was in progress. After disposing of questions arising upon the pleadings, the court decides the point as follows: "A further, and we think a conclusive, answer to the defendant's position is, that the demand on which the action is brought constitutes, according to the authority of the cases above cited, a tax — a municipal tax — levied by the corporation upon certain property, to defray the expenses of the improvement of a street adjacent to the property. The origin, obligatory force and whole nature of a tax is such that it is impossible to conceive of a demand that might be set off against it, unless expressly so authorized by statute. No case has been cited, and probably none can be found, which authorizes a defendant, when sued for a municipal assessment or tax, to set up a counterclaim." See, also, *Mc-Cracken v. Elder*, 34 Pa. St. 239; *Pierce v. City of Boston*, 3 Met. 520; *Johnson v. Howard and Trustee*, 41 Vt. 122; Cooley on Taxation, p. 13.

If the special tax authorized by statute to be levied and assessed for payment of these interest coupons as they mature was in fact levied and collected, defendant in error has but to apply for their payment to the proper custodian of the fund; if such special tax has not been levied and assessed, the remedy is to proceed against the officers in default to compel them to pay the tax. But in no event can the taxes assessed and collected for county purposes be diverted to other purposes than those named in the statute.

"To hold differently," as said in *Johnson v. Howard and Trustee, supra*, "would open the way to supposable

and probable complications that would tax professional and judicial wit to solve, to an extent that would not be likely to be compensated by any beneficial results that would be realized therefrom."

The decree of the district court is reversed, and the cause remanded with directions to the court below to dismiss the bill.

*Reversed.*