PRESENT : ROYCE, CH. J., REDFIELD, ROSS, POWERS, VEAZEY, TAFT, and ROWELL, JJ.

THE TOWN OF ST. ALBANS v. THE NATIONAL CAR CO.*

THE VILLAGE OF ST. ALBANS v. SAME.

*Taxation. Non-Resident Stockholders, where may be Listed. Constitutional Law. Mandamus. Judge.*

1.  Under our statute—R. L. s. 283—the stock of non-resident stockholders of a corporation located in this State may be legally set in the list of the town in which the corporation has its principal place of business; and the corporation compelled by *mandamus* to pay the taxes assessed upon such stock.†
2.  A statute authorizing such taxation, and allowing the corporation to deduct the taxes thus paid from the dividends due to such stockholders, is constitutional.
3.  When a charter is taken subject to future legislation, it may be modified not only by special amendments, but also by a general law.
4.ₒ After the parties had formally agreed in their statement that the "list was duly made out, verified, and returned according to law," if notice of assessment were necessary, the court would hold that it was given.
5.  A judge of the Supreme Court can legally make an order for the return of a petition for a writ of *mandamus* and for filing an answer thereto, although the proceeding was in favor of a town to compel a corporation to pay a tax, in which town the judge was a tax-payer,—as it was a ministerial, not a judicial, act.

PETITION for a writ of *mandamus*.

The petition was dated the 29th day of December, 1882.

* Heard at the General Term, 1883.

† R. L. § 283. "Shares of stock in banks, steamboat and transportation companies, trust companies, moneyed or other corporations whether named in this section or not —except railroad corporations—shall be set in the list like other personal estate to the owner thereof, in the town where he resides, if he resides in the State, otherwise in the town where the corporation or company issuing such stock has its principal place of business."

§ 284. "Taxes assessed on such stock of non-residents shall be paid by the corporation or company, and it shall hold such stock and the dividends thereon as security for such payment, and may deduct the amount from any dividends payable to such shareholders."

Chief Judge ROYCE signed an order directing that the petition should be returned to the Supreme Court of Windsor County on the 22d day of February, 1883; that notice be given to the petitionee by delivering a copy of the petition and order, at least thirty days before the session of court; that answer be made within fifteen days after service; that the testimony should be taken in the form of depositions on notice; and also directing when it should be taken.

The petition was verified upon oath before Chief Judge ROYCE; and also the recognizance for costs was taken by him.

The petitions, in substance, set forth sections 283 and 284 of the Revised Laws, relating to the taxation of non-resident owners of stock in corporations; and then alleged that the defendant company was a corporation duly organized under the laws of this State, with its principal place of business at St. Albans; that it is the owner of a large number of freight cars, and that its business consists in letting said cars for hire to railroads, both within and without this State.

The petition also set forth the amount of stock owned by non-residents, the names of the owners, where they lived, the voting and assessment of the taxes, their amount, and the defendant's refusal to pay. It alleged that C. N. Bishop, treasurer of St. Albans, on the 7th day of June, 1882 [stating the manner of notice], gave legal notice to the taxpayers to pay their taxes; and that since said "notice was given by said C. N. Bishop, treasurer as aforesaid, the said National Car Company has made and realized large gains and profits, and has declared two several dividends; that is to say, a dividend on the first day of July, 1882, and a dividend on the first day of October, 1882; and has paid over to said non-resident stockholders on account of such dividends, and as dividends on the stock held by them respectively, large sums of money, far in excess of the amount of said tax due your petitioner as aforesaid, disregarding its duty

to pay said tax to your petitioner, and hold said stock and dividends as security therefor, as aforesaid, or deduct the amount of the same from such dividends, as the law provides."

The prayer was that a writ of *mandamus* issue, commanding the Car Company to pay the taxes.

On the 11th day of January, 1883, the defendant company brought a bill of interpleader, stating that its capital stock consisted of twenty thousand shares of the par value of one hundred dollars each; that of this amount, fourteen thousand eight hundred and forty-two shares stood in the names of persons residing out of the State of Vermont; that the town of St. Albans had by its listers set in the grand list for the year 1882, and appraised at forty-five dollars per share all the shares of capital stock owned by non-residents; that the said town and village of St. Albans threatened to enforce payment of the treasurer of said defendant company, and had brought petitions for *mandamus* to compel, etc.; that the non-resident stockholders threatened to sue for any dividends due them, or for so much of said dividends as the Car Company should deduct and apply to the payment of said taxes; that said non-resident stockholders claimed that their said shares were not located in this State for the purposes of taxation; that there was an inequality and lack of uniformity of taxation as between resident and non-resident stockholders, in that the former were allowed to offset debts, while the latter were not; that "your orator further shows that it has no interest whatever as a corporation in the question of the right to assess and collect said taxes, or the payment of the same; but that in respect thereto it holds the position of a mere stakeholder; and that as it is advised and believes, is entitled to the protection of a court of equity by compelling the said parties to interplead and obtain the determination of the court upon the questions involved; and also that the said stockholders may thereby, as between themselves and the said municipal

corporation, have their respective rights determined, and so avoid a multiplicity of suits which would also involve your orator in great expense and trouble."

The defendant company in its said bill offered to pay into court the amount of the taxes, to be disposed of by direction of the court, or to execute a bond for the payment of such sums as the court should determine. On the prayer of the bill, REDFIELD, Chancellor, granted an injunction, enjoining the said town and village from taking any proceedings for the collection of said taxes, and from prosecuting the petition for a writ of *mandamus*. The injunction, on the 27th day of January, 1883, was modified so far as to allow the parties to proceed with the petition for *mandamus*.

The defendant company, at the February Term, 1883, of Windsor County, filed a motion to dismiss the petition, because of the action of Chief Judge ROYCE, in taking the recognizance, making the orders as to the return of the petition, etc., on the ground that he was a tax-payer in the town and village of St. Albans, and hence was disqualified to act. The defendant also filed an answer, embodying the motion to dismiss, and setting forth the facts, showing, as it claimed, the illegality of the taxation; as that the owners of the stock were non-residents, some living in the Dominion of Canada, and some in the other States of the United States; and, " especially, since all the property of this defendant consists in railway cars, in use upon various railroads in the United States, outside of the State of Vermont, but a small portion thereof being ever within the State of Vermont, and that transiently, and having no *situs* or permanent location therein."

The answer also alleged that the defendant company had " not in its control or possession any money or property whatever belonging to said non-resident stockholders, or either of them, or on which they, or either of them, can assert any claim or right, either at law or in equity, but

holds only corporate funds and property, wherein all stockholders, resident and non-residents, are equally alike interested.

" And whether dividends may or may not be hereafter declared, which will become payable to individual stockholders, will depend upon the future judgment and action of the directors of the corporation, based upon the earnings and success of the business of the corporation, hereafter to be ascertained.

" And this defendant further avers, that the said nonresident stockholders who were stockholders on the first day of April, 1882, and against whom said taxes were assessed, as set forth in said petition, and who are properly liable for said taxes, if the same are legal and valid, have many of them, from time to time, since said date, disposed of their stock, in the ordinary course of business, to other persons, and have ceased to be stockholders of this defendant.

" And this defendant further avers, that between the said first day of April, when said taxes were assessed as aforesaid, and the declaration of the first dividend that was made thereafter, many of said non-resident stockholders so assessed as aforesaid, have disposed of their stock to other persons, in the regular course of business, so that it is impossible, and would have been impossible at the time of the payment of said first dividend, for this defendant to pay said taxes out of the individual property of said assessed stockholders, or otherwise than out of their own corporate funds. And this defendant therefore denies that it could have paid said taxes out of said dividends, as averred in said petition."

On the 26th day of January, 1883, the town and village of St. Albans filed in the Court of Chancery a joint and several answer to the bill of interpleader. The parties submitted an agreed statement of facts to the court, among which are the following: That the defendant is duly incorporated, and has its principal place of business at St. Albans; that it is the owner of a large number of freight cars, and its business consists in letting the same for hire to railroads, both within and without this State; that on April 1, 1882, its capital stock consisted of 20,000 shares of

the par value of $100 each; that 14,842 shares of said stock stood in the names of non-residents; that the listers for the town of St. Albans for the year 1882, duly elected and qualified as such, did, in accordance with the provisions of the law, appraise all the capital stock of the defendant which it was their duty to appraise, at the sum of forty-five dollars per share, and set the shares of said stock so standing in the names of persons residing out of the State of Vermont aforesaid, in the list of said town of St. Albans, like other personal estate, to the several owners thereof, at one per cent of said forty-five dollars per share; and that said "list was duly made out, verified, and returned according to law by said listers"; that the taxes were voted, assessed, etc., and had never been paid; that the defendant has made and realized great gains and profits, and declared and paid over to its shareholders dividends at the times set forth in said petitions, and has paid over to its non-resident stockholders, on account of said dividends, and as dividends on the stock held by them respectively, since the giving or publication of said notices, large sums of money far in excess of the amounts claimed by these petitioners respectively, as and for said taxes; that the defendant had, at the time when said notices were given or published, and now has on hand, in surplus earnings, money more than sufficient to pay the taxes demanded by said petitioners.

It was also agreed that Chief Judge ROYCE was a resident citizen and tax-payer of St. Albans; that the cars of said company were all manufactured in Detroit, in the State of Michigan; that they are run into every State mentioned in the list of non-resident stockholders, and are only in this State *in transitu*, but fifty of said cars are daily in the town and village of St. Albans, and about one hundred and fifty daily in this State; that the defendant was not assessed and has not paid any taxes in the year 1882; that about 455 shares of stock in the defendant company, held by non-residents on the 1st day of April, 1882, were sold and trans-

ferred by said non-resident stockholders between that date and June 10, 1882, and about 473 shares between July 1, 1882, and January 1, 1883; that some of said non-resident stockholders have already paid taxes on said shares so owned by them in the States where they respectively reside.

The deposition of F. S. Stranahan, secretary and treasurer of the Car Company, was taken. He stated that he had received prior to August 1, 1881, protests from the non-residents against payment of the taxes, and threats of suit, if they were paid.

*Stephen E. Royce,* for the town of St. Albans.

Construction of the statute. Taxes are charges imposed by or under the authority of the legislature, upon persons or property subject to its jurisdiction. *People* v. *McCreery,* 34 Cal. 432. The individual, and not his property, pays the tax. No person is a tax-payer until he has been so declared by the proper officer. *Green* v. *Craft,* 28 Miss. 70. The tax laws of this State, only in exceptional cases, designate in express terms who shall be the tax-payer. In some instances, it is specially provided that some other than the owner shall pay the taxes assessed on property. That the individual property of an executor, trustee, under certain circumstances, may be taken for a tax imposed upon him in his representative character. *See Williams* v. *Holden,* 4 Wend. 223 ; *Green* v. *Craft, supra.* So the estates of infants may be assessed to their guardians personally. *Payson* v. *Tufts,* 13 Mass. 493. It is not necessary that a party should hold the legal title to real estate in order to be taxed therefor. *Stockdale* v. *Webster,* 12 Iowa, 536. If the property is taxable, the legislature could designate the tax-payer,— this corporation. Power of the State to tax : It can tax a corporation without regard to the residence of the stockholders: *Buffalo, &c., R. R. Co.* v. *Commonwealth,* Brewst. 386 ; or, in granting a franchise to a corporation, it may limit the powers to be exercised under it, and make it con-

tribute to the public revenues. *Monroe, &c., Bank* v. *Rochester*, 37 N. Y. 365. *See Duer* v. *Small*, 4 Blachf. 263; *State Treasurer* v. *Wright*, 28 Ill. 509; *L. Canal Co.* v. *Commonwealth*, 7 B. Mon. 160; *Blanding* v. *Burr*, 13 Cal. 343; *New Haven* v. *City Bank*, 31 Conn. 106; Story Confl. Law, s. 383; *Bank of Augusta* v. *Earl*, 13 Pet. 512; *Tappan* v. *Merch. Nat. Bank*, 19 Wall. 490; *State* v. *Cumberland, &c., R. R. Co.* 40 Md. 22. It is not only proper, but the usual method, in ascertaining the amount of tax which a corporation shall pay, to assess or compute it upon the capital stock. *Utica Cotton Mfg. Co.* v. *Supervisors*, 1 Barb. 432; *Mohawk, &c., R. R. Co.* v. *Clute*, 4 Paige, 384; *Commonwealth* v. *Lowell Gas Light Co.*, 12 Allen, 75; *New Orleans* v. *People's Bank*, 27 La. Ann. 646; *Rudderow* v. *State*, 31 N. J. L. 512; *St. Louis &c., Ins. Co.* v. *Charles*, 47 Mo. 462. Equal taxation requires only that it be equal and uniform on all of the same class. *State* v. *Lathrop*, 10 La. Ann. 398; *State* v. *Ogden*, Ib. 402. Trades, occupations, etc., may be taxed. *People* v. *Coleman*, 4 Cal. 46; *Commonwealth* v. *Ins. Co.* 11 Phila. 553; *R. R. Co.* v. *Co. of McLean*, 17 Ill. 291. Railroad companies may be taxed by a different rule from individuals. *State Railroad Tax Cases*, 92 U. S. 575; *Weber* v. *Reinhard*, 73 Pa. St. 370; *Adams* v. *Summerville*, 2 Head (Tenn.) 363; *Provident Institution* v. *Mass.* 6 Wall. 611. The *situs* of the stock is at the defendant's principal place of business; and the stock may be taxed there. *McGregor* v. *State Bank*, 12 Iowa, 79; *Middletown Ferry Co.* v. *Middletown*, 40 Conn. 65; *R. R. Co.* v. *Alexandria*, 17 Gratt. 176; 53 Mo. 17; 50 Md. 274, 417, 452; 40 Barb. 334; 48 Barb. 157; 32 Barb. 509; 16 Ohio St. 615; 32 Conn. 173; 12 Allen, 293; 18 La. Ann. 707; 36 Conn. 512; 47 Mo. 393; 12 Iowa, 527. *See* also 3 W. Va. 319; *Gordon* v. *Appeal Tax Court*, 3 How. 150; *Van Allen* v. *Assessors*, 3 Wall. 584; Delaware R. R. Tax Case, 18 Wall. 229; *Farrington* v. *Tennessee*, 95 U. S. 686; 96 U. S. 196; *Dartmouth College* v. *Woodward*, 4 Wheat. 700. If the State could tax the whole

of the capital stock, it could certainly tax a part of it. The fact that the same value is unavoidably taxed twice does not render the tax void. *Worth* v. *Ashe Co. Com.* 82 N. C. 420 ; *Whitesell* v. *North Hampton Co.* 49 Pa. St. 526 ; *State* v. *Newark*, 25 N. J. L. 315 ; 42 Pa. St. 424 ; 2 Cal. 590 ; 56 Mo. 503 ; 50 Md. 377. The statute is constitutional. Cooley Tax. p. 274 ; Burr. Tax. p. 189 ; *Faxton* v. *McCosh*, 12 Iowa, 527 ; *Catlin* v. *Hull*, 21 Vt. 152 ; *Danville Banking, &c. Co.* v. *Parks*, 88 Ill. 170 ; *Boston, &c. Co.* v. *Boston*, 4 Met. 181 ; *Michigan, &c. R. R. Co.* v. *Auditor General*, 9 Mich. 448. The case fails to show that the non-residents owed debts which should be offset. *State Railroad Tax Case*, 92 U. S. 575. On the above authorities it is clear that the State can tax the stock, and make the defendant the collector. *Mandamus* is the proper remedy.

*Wilson & Hall*, for the village of St. Albans.

Judge ROYCE was not disqualified. R. L. s. 692; *Amended Charter*, Acts of 1876, No. 192, s. 13; *State* v. *Haynes*, 35 Vt. 565; *Leonard* v. *McArthur*, 52 Vt. 439. The writ of *mandamus* will be granted when it clearly appears that the petitioner has a legal claim, and is without other adequate remedy. High Ex. Rem. ss. 142, 143; Cooley Tax. p. 523; *State* v. *Mayhew*, 2 Gill, 487; *Person* v. *Warren R. R. Co.*, 32 N. J. 441; *In re White River Bank*, 23 Vt. 478; 39 Vt. 92; 34 N. J. 193; 5 Pick. 323; 42 Md. 480; 33 Me. 482. A tax cannot be enforced by an action. *Johnson* v. *Howard*, 41 Vt. 123; *Shaw* v. *Peckett*, 26 Vt. 482. The law is well settled that a corporation may be assessed upon its stock, and the mode of doing this is peculiarly within the power of the legislature. *Delaware Tax Case*, 18 Wall. 229; Burr. Tax. s. 83; Cooley Tax. p. 273; *Duer* v. *Small*, 4 Blachf. 263; *Tappan* v. *Merch. Nat. Bank*, 19 Wall. 490. The corporation, in effect, was taxed through its shares of stock. *State Railroad Tax Case*, 92 U. S. 575; Burr. Tax. s. 43; *Faxton* v. *McCosh*, 12 Iowa, 527.

Neither the charter of the defendant, nor any law of the State in force at the time said charter was granted, exempted the corporation, its property, or shares of stock from taxation; hence, the right of the legislature to impose additional taxation to that existing at the time. *Commonwealth* v. *Eastern Bank,* 10 Pa. 451; *Delaware Tax Case, supra.* When this corporation was chartered, the law recognized such shares of stock as property subject to taxation in this State. Laws of Vermont, 1855, No. 43, ss. 4, 36; Burr. Tax. s. 83; R. L. s. 240; 64 N. Y. 541; *People* v. *Trustees of Ogdensburgh,* 48 N. Y. 390; *Same* v. *Gardner,* 51 Barb. 352; *Maltby* v. *Reading, &c., R. R. Co.* 52 Pa. 140; Cooley Tax. p. 274; 57 Md. 31; 59 Md. 185; 15 Reporter, 173; 100 U. S. 491; 104 U. S. 111; 9 Wall. 353. Stock held by residents in foreign corporations is not taxed, when all such stock is taxed where the corporation is situated; R. L. s. 240; therefore, stock in our own corporations owned by non-residents should be taxed here. *Trowbridge, adm'r,* v. *The Commissioners of Taxes,* 4 Hun, 595; *Duer* v. *Small, supra.* The tax is not invalid on the ground that no offsets were allowed the stockholders, as it does not appear that they were entitled to any. *People* v. *Dolan,* 36 N. Y. 59; *People* v. *Weaver,* 100 U. S. 539; *Hills* v. *Exchange Bank,* 105 U. S. 319. If this tax affects the value of the stock, so does taxation always affect all property. *Heine* v. *The Levee Commissioners,* 19 Wall. 659; Burr. Tax. s. 109. The rights of the parties cannot be adjusted in the interpleader suit. Hill. Inj. p. 3, n., p. 253, s. 7; High Ex. Rem. s. 567; Dan. Ch. p. 1661; *Lincoln* v. *R. & B. R. R. Co.* 24 Vt. 639.

*Noble & Smith* and *E. J. Phelps,* for the respondent.

The case has no standing in court, because of the action of Chief Judge ROYCE, he being directly and materially interested in the result of the suit. If our statute allows it, it is in conflict with the Constitution of the United States.

It is taking property without "due process of law." Cooley Con. Lim. p. 441. It is a maxim, that no one ought to be a judge in his own cause; and Lord Coke has laid it down that even an act of Parliament made against natural equity, as to make a man a judge in his own case, would be void. Cooley Con. Lim. pp. 211, 514, 516; *Pierce* v. *Butler*, 16 Vt. 101; *Waters* v. *Day*, 10 Vt. 487. The taxes sought to be collected by this proceeding are illegal. They are assessed against persons not citizens of the State, and upon property not within its jurisdiction.

It may be conceded, that the power to tax extends not only to persons, but to property which has an actual and tangible *situs* within the State; and that a corporation may always be taxed in the State where it exists, upon all personal property it possesses at any place. But the property of the non-resident shareholders, upon which these taxes are assessed (not against the corporation, but the shareholders), consists only of certain incorporeal rights having no *situs* in this State, and capable of none, which follows the person of the owner, and has his *situs*, wherever that may be, taxable where he is taxable, and nowhere else. The interest of the stockholder is entirely separate and distinct from that of the corporation. As to the nature of stockholders' interest, *see Van Allen* v. *Assessors*, 3 Wall. 581; *Queen* v. *Armand*, 9 Adolph. & E. 806; *Wheelock* v. *Moulton*, 15 Vt. 519; Burr. Tax. p. 46; Cooley Tax. p. 15; *State Tax on Foreign, Held Bonds*, 15 Wall. 300; 2 Red. R. R. pp. 461, 466. In the following cases, among others, it is decided that a State cannot legally tax the stock of non-resident stockholders: *State* v. *Branin*, 33 N. J. 507; *State* v. *Ross*, Ib. 525; *State* v. *Thomas*, 26 N. J. 181; *In re Short's Est.* 16 Pa. 66; *McKeen* v. *Co. of North Hampton*, 49 Pa. 519; *Commonwealth* v. *Standard Oil Co.* Reporter, Jan. 10, 1883; *Barrington* v. *Berkshire*, 16 Pick. 572; *Oliver* v. *Washington Mills*, 11 Allen, 281; *Richmond* v. *Daniel*, 14 Gratt. 385; *Evansville* v *Hall*, 14 Ind. 27; Ang. Corp. s. 458;

*Savings Bank* v. *Nashua,* 46 N. H. 389; *People* v. *Supervisors,* 11 N. Y. 563; *Kirtland* v. *Hotchkis,* 100. U. S. 498; *R. R. Co.* v. *Jackson,* 7 Wall. 262; *Bonaparte* v. *Baltimore,* U. S. Sup. Ct. Am. Law Reg. May, 1882; Am. Law Reg. Feb. and March, 1876. *Catlin* v. *Hull,* 21 Vt., is not in conflict with the above cases. The charter of the corporation was not amended by the statute in question. When the legislature thinks proper to exercise its reserved power of amending this charter, it must do so directly,—in direct terms. Such action cannot be inferred from a general act taxing such stock. *Oliver* v. *Washington Mills, supra; San Mateo County* v. *Southern Pacific R. R. Co.* 13 Fed. Rep. 722; *Commonwealth* v. *Essex Co.* 13 Gray, 239; *Albany R. R. Co.* v. *Brownell,* 24 N. Y. 345; *R. R. Co.* v. *Maine,* 96 U. S. 499; Sinking Fund Cases, 99 U. S. 700; *Detroit* v. *R. R. Co.* 43 Mich. 140. If these shares can be taxed here, it can only be on the ground that they have a *situs* in two different places at the same time; and to hold that this is so, would expose this property to double taxation,—a result repugnant to all general rules and systems of taxation. Cooley Tax. p. 165; *Savings Bank* v. *Nashua, supra; Salem Iron Co.* v. *Danvers,* 10 Mass. 514; *Amesbury Woolen Co.* v. *Amesbury,* 17 Mass. 461; *Water Power Co.* v. *Boston,* 9 Met. 199; *State* v. *Sterling,* 20 Md. 502. But if such shares can be taxed, the Act of 1880, No. 78, is open to the fatal objection, that it departs from the rule of uniformity and equality of taxation as between residents and non-residents, in that the former can deduct debts from the assessed value of their property, while the latter cannot. This is in direct violation of the Fourteenth Amendment of the Constitution; and the point was expressly ruled in the case of *San Mateo County* v. *Southern Pacific R. R. supra.* Again, there is no provision for giving notice to the non-resident as there is to resi- dent owner. The statute is also unconstitutional, in that it compels the corporation to pay the tax,—the taking of one man's property to pay another man's debt. The writ of

*mandamus* should not issue. It is never granted in doubtful cases: High .Ex. Rem. p. 11; 6 Adolph. & El. 335; or when it becomes necessary to decide on the constitutionality of a law involving the interests of third persons: *Smyth* v. *Titcomb*, 31 Me. 272; *Sabine* v. *Rounds*, 50 Vt. 74; *Cook* v. *Peacham*, Ib. 234; *State* v. *Babcock*, 51 Vt. 575: and should be denied when all the parties in interest are not before the court: High, s. 9; *People* v. *Forquer*, Breese, 68. The petitioners have other adequate remedy. High, ss. 15, 21; Burr. Tax. 451; 19 Wall. 124; 3 Bl. Com. 169; Co. Litt. 159 (A); Bac. Ab. (Stat. K.)

The opinion of the court was delivered by

TAFT, J. The action of Judge ROYCE in making an order for the return of the petition, and the filing of an answer, was not an adjudication of matters in his own cause. It was of the nature of a ministerial act, in which no right of the judge was passed upon.

The National Car Company was incorporated by the legislature of this State in 1868. The charter was granted subject to the control of future legislation, as the public good might require. In the year 1880, the Legislature passed an act, No. 83, Acts of that year, making the stock in corporations liable to taxation, the stock of non-residents to be set in the list in the town where the corporation had its principal place of business. The office of the Car Company has always been in St. Albans, in this State; and the taxes in question are those assessed upon the stock of non-residents on the list of 1882. The first question that arises, is in reference to the validity of the act of 1880, as to the taxation of stock held by non-residents. Can such stock be legally taxed in this State? Are the taxes sought to be collected valid? The power of taxation by a State extends to persons, property, and business within its jurisdiction. Personal property follows the person of its owner, and has its *situs* at his domicile; but such as is visible, movable, tangible,

may for the purposes of taxation be separated from him, and he may be taxed on its account at the place where it is actually located. Debts can be taxed only in those places where the creditors reside. They have no *situs*, but follow that of the owner. These are familiar adjudged principles. The shares of stock, upon which the taxes in question were assessed, were personal property. *See charter*, s. 4; R. L. s. 3258. Admitting the general doctrine that in the absence of all provisions to the contrary, the stockholders in a corporation can be taxed upon their stock at the place where they reside, we think it is equally true that the nature of stock is such that it may be taxed elsewhere. If shares of stock represent nothing but that which is intangible, it could with better reason be claimed that it must always follow the domicile of the owner, and could not be taxed elsewhere; but it represents the property of the corporation, that in which the capital stock is invested. The owner of stock is not merely the owner of a right to dividends, but he is the owner of a proportionate share of the property of the corporation; and we think that for this reason it has well been held that the law which creates the shares "may separate them from the person of their owner, for the purposes of taxation, and give them a *situs* of their own." *Tappan* v. *Merchants National Bank*, 19 Wall. 490. Judge COOLEY, in his valuable work on taxation, p. 274, in stating the general rule, that "the individual corporators, if taxed on their shares of stock, are to be taxed where they respectively reside," adds this important qualification, "though they may be, and sometimes are, taxed at the place where the corporate business is carried on."

But we think there is a still stronger reason why the taxation in question was valid. The corporate home of the company is in this State; the corporation is expressly subject to the exclusive legislative authority of the State; its dwelling is here, although it may do business elsewhere; and its members, when they enter into the relation of stock-

holders, do so subject to such changes in the law relating to the corporation as the supreme legislative authority deems it proper to make. The remarks of WAITE, Ch. J., in the opinion delivered in the case of the *Canada Southern Railway* v. *Gebhard*, 109 U. S. 527, seems to us to enunciate the correct principle, and to be decisive of the question under consideration: " Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere. A corporation of one country may be excluded from business in another country—*Paul* v. *Virginia*, 8 Wall. 168—but, if admitted, it must, in the .absence of legislation equivalent to making it a corporation of the latter country, be taken, both by the government and those who deal with it, as a creature of the law of its own country, and subject to all the legislative control and direction that may be properly exercised over it at the place of its creation. Such being the law, it follows that every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes." This principle is as applicable to the duties and liabilities of the individual stockholder, as to the powers and obligations of the corporation itself. There is no just reason why this should not be so held. The stockholders apply to the legislative authority for leave to exist, for certain privileges of an extensive and valuable character; the corporation becomes a creature of the State, and the stockholders take their organization with all the liabilities and duties imposed upon them by the law of the land, with the implied right on the part of the State to modify such liabilities and duties in respect to taxation as the established policy of the State authorizes. It was conceded in argument that if the statute relating to the taxation of

the shares had been inserted in the charter, that taxation under it would be legal. The charter would have been taken by the stockholders subject to such provision. But the stockholders took the charter subject to the right of the legislature to modify or repeal its provisions. Such modification may be made by general law, applicable to all similar corporations as well as by special amendments to each charter. Taking the charter subject to the power of future legislation, the stockholders took it subject to the law in contention as absolutely as if it had been included in the charter originally. The corporation also received its existence subject to modification by future legislation, though under the form of a general law. We see no valid reason why we should hold, without such a provision in the charter originally, that upon the acceptance of it, the stockholders or corporation should be exempt from the duties relating to taxation which are intended to apply to all alike. The taxation, therefore, in the manner shown, was legal.

From the principles stated, it logically follows that the provision of the statute requiring the corporation to pay the taxes, is not in violation of the Constitution of the United States. The rights, powers, and duties of the corporation, and its individual stockholders, are governed and controlled by the general laws of the land; and if they desire to retain their corporate rights they must submit to such reasonable and valid regulations as the government deems it proper to establish.

The shares of bank stock owned by non-residents have been taxed in substantially the same manner in this State since 1849. *See* No. 18 of the Acts of that year.

Another objection made by the brief for the company is, that no notice of the assessment was given the stockholders. We do not consider this question, as it does not, in our opinion, arise. It is agreed that the "list was duly made out, verified, and returned according to law." It

could not have been so duly made out, verified, and returned, if the listers omitted any necessary step in the assessment. If notice was necessary we must hold that it was given.

Shall the writ of mandamus issue? The right of the petitioner to the taxes in question is clearly established; it is clear and plain. The writ should not be granted if the petitioner has an adequate remedy at law. Taxes are not debts in the ordinary sense of that term: Cooley Tax. 13; and cannot be recovered in an ordinary action at law. *Webster* v. *Seymour*, 8 Vt. 135; *Shaw* v. *Peckett*, 26 Vt. 482; *Johnson* v. *Howard*, 41 Vt. 122; *Daniels* v. *Nelson*, Ib. 161. The trustee process may be maintained in some cases, but the collector must find some one owing the person assessed before he can by that process collect the tax. It is said that an action at law can be maintained against the corporation. How? The tax is not strictly against the corporation, but against the non-resident stockholders. The statute simply makes it the duty of the corporation having control of the property of the non-resident stockholders to pay their taxes therefrom. It is at least doubtful if any such action could be maintained against the corporation. But admitting such an action could be sustained,—this brings us to the question whether in the collection of taxes by a municipal corporation, an action, either at law or in equity, is an adequate remedy.

The non-payment of taxes may seriously embarrass all the operations of the government; and if the State were forced to resort to actions at law for their collection, the expenses of litigation might exceed the receipts of the treasury. So serious did this matter become in one of our sister States, that the legislative power interfered and provided that no judicial interference should be had in any levy or distress for taxes; and the court held the provision a valid one. The court say: "How could a government calculate with any certainty upon the revenues, if

the collection of the taxes was subject to be arrested in every instance in which a tax-payer or tax-collector could make out *prima facie* a technical case for arresting such collection? Far better is it to let the individual pay to the government what it demands of him, at the time of the demand, as he will be certain of getting it back with interest, after more or less delay, if it was not due." *Eve* v. *State*, 21 Ga. 50; *Cody* v.*Lennard*, 45 Ga. 85; *Scofield* v. *Perkerson*, 46 Ga. 350; and *see Pullen* v. *Kinsinger*, U. S. C. C. Ohio S. D. 9 Am. Law Reg. N. S. 557. Judge FIELD says in *Hagar* v. *Reclamation Districts*, S. C. U. S.: "The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice." 18 Reporter, 1. More summary methods are required for the enforcement of taxes. The agreed statement of facts shows that a large amount of the stock upon which the taxes in question were assessed was sold after the date of the list and before the taxes were payable, so that there is no adequate remedy for their collection, the party assessed being without the State and having no property within it; and the only remedy suggested in those cases where there has been no transfer seems to ·be an action at law against the corporation.

Had the petitioners in this case invoked the aid of a court of equity, a more serious question would be presented than the one raised by the bill of interpleader, brought by the respondent. What we have already said as to the delay attendant upon legal proceedings for the collection of taxes, is directly applicable. Were it not, there are grave objections to the position taken by the respondents. Are they not interested in the litigation? and has the Court of Chancery power or process to bring the non-resident stockholders before it? But it is not necessary to discuss these questions; for upon the ground stated such proceedings furnish no adequate remedy for the collection of taxes.

We hold there is no such adequate remedy as to bar the issue of a writ of *mandamus*.

It is, therefore, adjudged that a writ of *mandamus* issue in accordance with the prayer of the petition, the payment of the sum named therein and costs to be made within fifteen days from the issuing of the writ.