THE AMERICAN COAL COMPANY *vs.* THE COUNTY COMMISSIONERS OF ALLEGANY COUNTY.

*Construction of the Act of 1880, ch. 20, relating to Taxation of stock—Taxation of shares of Non-resident stockholders—Real property in another State held by a Domestic Corporation, to be included in the Valuation of its stock—Effect of a Levy not completed till after the time named in sec. 4, of Art. 28, of the Code—Liability of Corporations to be sued for the Tax levied upon the Shares of its stockholders—Duty of Court in respect of an Agreed statement of facts—How questions of Pleading must be raised.*

The capital stock of a corporation was divided into 58,800 shares, of which 58,700 shares were owned by non-residents of the State, and 100 shares by a resident of Allegany County. The corporation was regularly assessed with its real property in Allegany County for the year 1880, and the tax assessed thereon was duly paid. The State Tax Commissioner, under the Act of 1878, ch. 178, as amended by the Act of 1880, ch. 20, which took effect from the 25th of February, 1880, after deducting the value of the real estate so assessed from the aggregate value of the total number of shares of capital stock of the corporation, as directed by the statute, ascertained and determined the assessable value of each share of the stock, and of the whole number of shares, in addition to the assessed value of the real estate. The corporation was a coal mining company created under the authority of this State, and conducting its works and mining operations in Allegany County, within this State. It also owned real estate in the State of New Jersey, needed and used as a wharf for purposes of its business, which enhanced the market value of the stock of the company, and which market value, so made up, determined the assessable value of the stock, as fixed by the State Tax Commissioner. In an action by the County Commissioners of Allegany County against said corporation to recover the tax for the year 1880, claimed to be due said county in respect of the assessed value of all the shares of the stock of the defendant, as ascertained by the State Tax Commissioner, it was HELD:

American Coal Co. *vs.* County Comm'rs of Allegany County.

1st. That the manifest design of sec. 151, of Art. 81, of the Code, as re-enacted with amendments by the Act of 1880, ch. 20, was, so far as the right of local taxation was concerned, to give to the City of Baltimore, and each of the counties, the full benefit of all the taxable property having either an actual or constructive *situs* within their respective limits; and this could not consistently be done upon any other construction than that adopted by the Court in the case of *Baltimore City vs. The Pass. R. Co.*, 57 Md., 31, where it was held to be within the reason and purview of the statute that the Tax Commissioner should not only certify the number and value of the shares owned by residents, but should likewise certify to the county or city authorities where the corporations are situate and conducting their operations, as defined by the statute, the number and value of the shares owned by non-residents of the State, for purposes of local taxation.

2nd. That the assessment of the stock of the defendant was not illegal because of its value being determined by including the real estate situate in the State of New Jersey.

The certificate of the State Tax Commissioner, as to the assessable valuation of the stock of the company for county purposes, was not furnished to the County Commissioners until about the 23rd of July, 1880; and it was not until immediately after its receipt that they charged the company with the assessable value of its stock thus ascertained and determined, and levied a tax on such assessable value, at the rate previously fixed by them for that year. The delay in furnishing the certificate was occasioned by an appeal taken by the company from the action of the State Tax Commissioner, which was not finally determined before the 22nd of July, 1880, the day before the certificate was transmitted by him to the County Commissioners. The Code, Art. 28, sec. 4, provides that the County Commissioners shall meet to make the annual levy of taxes previous to the first day of July in each year. HELD:

That under the above circumstances, showing no fault or neglect on the part of the County Commissioners, there was no sufficient ground for saying that the tax in question was illegally assessed or levied.

The declaration proceeded as for taxes levied upon the property of the corporation and therefore due from it, without reference to the assessment and levy upon the shares of the individual stockholders. The assessment of the tax was required to be upon the shares of the stock belonging to the individual stockholders as such, and

American Coal Co. *vs.* County Comm'rs of Allegany County.

not as upon property belonging to the corporation. The corporation however, was required by the statute to pay the taxes assessed upon the shares of stock, and when it should have paid such taxes, the same were directed to be charged to the account of the respective stockholders by the corporation. HELD:

1st. That the corporation was under no duty or obligation to pay the taxes assessed upon the shares of stock of the individual stockholders, except as provided by the statute. But the statute having created the duty and obligation to pay, when the shares of stock are assessed to the individual owners, that duty and obligation on the part of the corporation may be enforced by a proper action at law, the plaintiff in such case showing the right claimed to be within the provisions of the statute.

2nd. That as there was no demurrer to the declaration, nor did it appear that there was any objection whatever taken in the Court below to the sufficiency of the pleading, and the case was submitted to the Court on an agreed statement of facts; upon such statement it was simply the duty of the Court to declare the law upon the facts thus admitted.

3rd. That if parties desire to raise questions on the pleading, it must be done in some established mode, as by demurrer, motion in arrest, or by prayer that refers to and involves a consideration of the pleading. But on an agreed statement of facts, the Court is confined to declaring the law arising upon the facts admitted, and is not called upon for judgment as to the sufficiency of the pleading.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*William Walsh,* for the appellant.

*Benjamin A. Richmond,* and *William Brace,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

This action was instituted by the appellees against the appellant, a coal mining corporation, incorporated by the

law of this State, to recover certain taxes, assessed for county purposes, upon the shares of stock issued by the appellant, for the year 1880.

The declaration counts upon the claim for taxes, as if the same had been assessed to and levied upon the property of the appellant primarily, without reference to the assessment upon the shares of the individual stockholders.

The appellant pleaded, 1st. Never indebted as alleged; 2nd. Never promised as alleged; and 3rd. Payment.

The case was tried and determined in the Court below on an agreed statement of facts.

By this agreed statement of facts, it is shown that the capital stock of the appellant is divided into 58,800 shares, of which 58,700 are owned by non-residents of the State, and only 100 shares by a resident stockholder of this State, and who resides in Allegany County.

It is also shown, that the appellant was regularly assessed with its real property in Allegany County, valued at $400,000, for the year 1880, and that the tax assessed thereon was duly paid. The State Tax Commissioner, however, under the Act of 1878, ch. 178, as amended by the Act of 1880, ch. 20, after deducting the value of the real estate so assessed, from the aggregate value of the total number of shares of the capital stock of the appellant, as directed by the statute, ascertained and determined the assessable value of each share of stock to be $3.33⅓, amounting in the whole to the sum of $196,000, in addition to the assessed value of the real estate of the appellant.

It is further shown that the rate of taxation for county purposes, for the year 1880, was 75¼ cents on each $100 of assessed value, and that the total amount of taxes claimed to be due the county from the appellant, in respect of the assessed value of the shares of stock at $3.33⅓ per share, is $1474.90, with interest from the 1st of January, 1881.

It is also agreed that the appellant owns real estate in the State of New Jersey, needed and used as a wharf for purposes of its business as a coal mining company, of the value of $150,000, which enhances the market value of the stock of the company, and which market value, so made up, determined the assessable value of the stock, as fixed by the State Tax Commissioner:

It is further agreed, that the certificate of the State Tax Commissioner, as to the assessable valuation of the stock of the appellant, for county purposes, as directed by the statute, was not furnished to the appellees until about the 23rd of July, 1880, and that it was not until immediately after the receipt of such certificate that the appellees charged the appellant with the assessable value of its stock, thus ascertained and determined, and levied the tax of 75¼ cents per $100 on such assessable value of the stock so returned.

It is upon these facts that the appellant insists that the judgment below should be reversed by this Court; that judgment being for the amount of the taxes claimed by the appellees.

For the purpose of fixing the *situs* of the stock held in the various corporations of this State, by non-resident shareholders, in respect to the right of taxation, the Code, Art. 81, as re-enacted by the Act of 1874, ch. 483, sec. 132, after declaring that the stock of certain kind of corporations shall be considered as situate at the place of the location of the principal office of business, within this State, of such corporations, declares that the stock of mining, manufacturing, and other like corporations, shall be taken as situate at the place where the works of such corporations, or the greater part of their operations, respectively, shall be conducted, and that such stock "shall be assessed in like manner, in the county or city where such works are situate." That is to say, that notwithstanding the owners of the shares of stock may be

non-resident of the State, such shares of stock shall be liable to assessment in the county or city where the operations of the corporations are conducted, in the same manner as if the owners of such shares were residents of such county or city.

In this case the appellant is a coal mining corporation, incorporated under the authority of this State, and conducts its works and mining operations in Allegany County, within this State.

Such being the case, the shares of stock of this and all corporations, liable to taxation are required to be assessed to the owners of such shares, whether the owners be residents or non-residents of the State, and not to the corporation. This is expressly required by the general assessment Act of 1876, ch. 260, sec. 17, and also by the Act of 1878, ch. 413, sec. 2; the latter Act providing that all shares of stock in corporations of this State, whether owned by residents or non-residents of the State, "*shall be liable to be valued to the respective owners thereof,* and to be assessed and taxed as the property of such respective owners." And by the Code, Art. 81, sec. 149, as enacted by the Act of 1878, ch. 178, creating the office of State Tax Commissioner, that officer is invested with the power, and required to perform the duties, that theretofore devolved upon the Comptroller of the State in respect to the valuation and assessment of the shares of the capital stock of corporations, for the purposes of State taxation; and by the sec. 151 of Art. 81 of the Code, as re-enacted with amendments by the Act of 1880, ch. 20, which took effect from the 26th of February, 1880, it is provided that—

" At the time of making the returns of stockholders to the County Commissioners and Appeal Tax Court of Baltimore City, as required by law, the president, or other proper officer, of every bank or other incorporated institution incorporated under the laws of this State, or doing

business therein, and of every joint stock company doing business in this State, shall furnish to the County Commissioners of each county in which such bank or other incorporated institution, or joint stock company, shall own or possess any real property, and to the Appeal Tax Court of Baltimore City, if such bank or other incorporated institution or joint stock company shall own or possess any real property in said city, a true statement of such real property, situated or located in such county or city, and such real property shall be valued and assessed by said County Commissioners and Appeal Tax Court, respectively, to the said bank or incorporated institution, or joint stock company, so owning the same, and said County Commissioners and Appeal Tax Court shall give duplicate certificates of such valuation and assessment to such president or other officer, who shall transmit one of such duplicate certificates with his return to the State Tax Commissioner; and State, county or city taxes, shall be levied upon and paid by such bank or other incorporated institution, or by such joint stock company, on such assessment, in the same manner as the same are levied upon and paid by individual owners of real property in such county or city. The respective taxable values of the shares of stock in such banks, corporations and joint stock companies, shall be ascertained by the State Tax Commissioner in the manner following: He shall deduct the assessed value of such real property belonging to the respective banks, corporations, or joint stock companies, from the aggregate value of all the shares of such respective banks, corporations or joint stock companies, and divide the residuum by the number of the shares of the capital stock, or shares of such respective banks, corporations, or joint stock companies, and the quotient shall be the taxable value of such respective shares for State purposes; and when the valuation and assessment of the shares of the capital stock; or shares of such bank, corporation or joint stock company, shall have been *finally*

*determined* or made for State purposes, the State Tax Commissioner shall certify to the County Commissioners of each county where any of such respective stockholders or shareholders may reside, and to the Appeal Tax Court of Baltimore City, if any of said stockholders or shareholders reside in said city, the assessed taxable value of such respective shares of stock or shares so ascertained as aforesaid, and the taxable value of such respective shares of stock or shares in such banks, corporations, or joint stock companies, owned by residents of this State, and taxable within this State, shall, for county and municipal purposes be *valued to the owners thereof* in the county or city in this State in which such owners shall respectively reside; but the taxes assessed upon said respective taxable values, of such respective shares of stock, or shares, *shall be collected* from such bank, corporation or joint stock company, *and when so paid, shall be charged by such bank, corporation or joint stock company, to the account of such stockholders or shareholders respectively."*

It will be observed that, by the terms of the statute, the certificate of the State Tax Commissioner is required to be furnished to the County Commissioners, and to the Appeal Tax Court, where the stockholders reside. But inasmuch as the shares of stock owned by non-residents of the State are given a fixed *situs* by law, and are equally liable to taxation as the shares owned by residents of the State, it has been held to be within the reason and purview of the statute that the Tax Commissioner should not only certify the number and value of shares owned by residents, but should likewise certify to the county or city authorities where the corporations are situated and conducting their operations, as defined by the statute, the number and value of the shares owned by non-residents of the State, for purposes of local taxation. This was expressly decided by this Court in the recent case of *The Mayor and City Council of Baltimore vs. Baltimore City*

*Pass. R. Co.*, 57 *Md.*, 31, and it is therefore no longer an open question. The manifest design of the law was, so far as the right of local taxation is concerned, to give to the City of Baltimore, and each of the counties, the full benefit of all the taxable property having either an actual or constructive *situs* within their respective limits; and this could not consistently be done upon any other construction than that adopted by the Court in the case to which we have referred.

Conceding, however, the liability of the stock held by non-residents of the State to taxation for county and city purposes, the appellant contends that the assessment of the stock in this case was illegal, because its value was determined by including the real estate of the corporation, situated in the State of New Jersey. But to this contention we cannot accede. The appellant is a Maryland corporation, deriving its existence, and all its powers and franchises, from this State. And such being the case, it is settled, that the sovereign power of taxation extends to everything which exists by the authority of the State, or which is introduced by its permission, except where such power is expressly or by necessary implication excluded. The separate shares of the capital stock of the corporation are authorized to be issued by the charter derived from the State, and are subject to its control in respect to the right of taxation; and every person taking such shares, whether resident or non-resident of the State, must take them subject to such State power and jurisdiction over them. Hence the State may give the shares of stock, held by individual stockholders, a special or particular *situs* for purposes of taxation, and may provide special modes for the collection of the tax levied thereon. *State vs. Mayhew*, 2 *Gill*, 487; *National Bank vs. Commonwealth*, 9 *Wall.*, 353. And while it is true, that the shares of the capital stock of the corporation represent the capital stock, and everything of which the capital stock is composed,

whether invested in real estate or other kind of property, the *situs* of the investment (other than the real estate of the company situated in this State,) is wholly immaterial. The only question that the State Tax Commissioner is required to determine, in fixing the assessable value of the stock, is its "true value, in dollars and cents;" and though such value may be dependent upon investments made beyond the jurisdiction of this State, yet such investments, whether in real estate or otherwise, cannot be traced by the Tax Commissioner, and be made the subjects of abatement from the "true value" of the shares of stock. In the first place, such inquiries would be impracticable in their very nature; and, in the second place, such abatements would be eminently unjust to the State. The true criterion, as fixed by the statute, is the true value of the stock, without reference to the question where, or in what manner or nature of property or security, the capital stock may be invested. Whether that be invested in real estate, or other property, beyond the jurisdiction of this State, the latter having control over the shares and their true value, the peculiar nature and value of the investment of the capital stock of the corporation, beyond the limits of the State, can form no proper subject for specific deduction or abatement from the true value of the shares of stock, when presented to be assessed for purposes of taxation. It is exclusively with the shares of stock, and their true value, as representing the entire corporate assets, that the Tax Commissioner has to deal, and not with the nature and locality of the investment of the capital stock of the corporation, except as to the real estate of the company situate within this State. Nor is there anything novel in the principle of such taxation. In the case of *Kirtland vs. Hotchkiss*, 100 *U. S.*, 491, it was held that it was competent to a State to tax her resident citizens for debts held by them against non-residents, evidenced by the bonds of the latter, the payment whereof was secured

by a deed of trust or a mortgage upon land situate in another State. Here both the corporation and the shares of stock issued by it have a legal *situs* in this State, and the value and security of the shares of stock are only enhanced by the investment of a part of the capital stock of the corporation in real property in another State. The analogy would seem to be too close for sound distinction. Nor is this case distinguishable in principle from the more recent case of the *Nevada Bank vs. Sedgwick,* 104 *U. S.,* 111. In that case, part of the capital stock of a State bank was invested in foreign countries; but it was held that the tax of the United States upon the capital of such bank, embraced the investment, and that such investment was liable to the tax. The Court said that the bank was incorporated and organized under the laws of one of the States of the Union, and it had its principal place of business within the United States. It was, therefore, subject to the sovereign power of the United States, and a proper object of taxation. The investments abroad were still the property of the bank, and part of its capital. And so in this case, the investment in the purchase of the real estate in New Jersey is the property of the appellant, and a part of its capital stock. It can make no difference, so far as the power of the State to tax the shares of stock is concerned, that the investment is in real estate, rather than any other kind of property beyond the jurisdiction of the State.

But, apart from the objection just considered, it is contended that the assessment and levy of the tax upon the shares of stock were illegal and void, because not made within the time prescribed by law. And whether that be so or not we must next consider.

The Code, Art. 28, sec. 4, provides that the County Commissioners shall meet to make the annual levy of taxes previous to the first day of July in each year. This is codified from the Act of 1853, ch. 239; but it will be ob-

served that it does not say that the levy of the taxes shall in all respects be completed before the day named. The construction of the statute should be reasonable and liberal, in order to support the action of the Commissioners, rather than strict and severe by which the action of the Commissioners would be defeated.

It is not pretended that the County Commissioners did not levy the annual tax upon the real estate of the corporation in due time, or that they failed to furnish the certificates of such levy as required by law. Nor is there any thing to show that the State Tax Commissioner failed to value and assess the stock within the time prescribed by law (Code, Art 81, sec. 145, as modified by the Act of 1878, ch. 178, sec. 149); and in the absence of any thing to the contrary, we must presume he did his duty in this respect. But by the Act of 1878, ch. 178, sec. 152, the right of appeal is given to the corporation from the assessment of the State Tax Commissioner, to the Comptroller and Treasurer of the State, to be exercised within thirty days after notification; and the law imposes no limit for the determination of the appeal. The certificate of the valuation and assessment of the stock is not required to be sent to the County Commissioners by the State Tax Commissioner until such valuation and assessment "shall have been *finally* determined and made for State purposes;" and in this case an appeal was taken, and it does not appear to have been finally determined before the 22d of July, 1880, the day before the certificate of assessment was transmitted by the Tax Commissioner to the County Commissioners. And it is agreed that the County Commissioners made the levy on the assessable value of the stock immediately, or within a few days after the receipt of the certificate. Under such circumstances, showing no fault or neglect on the part of the County Commissioners, we discover no sufficient ground for saying that the tax in question was illegally assessed or levied. The

whole proceeding was *in fieri* from the assessment of the
real estate of the corporation with the tax of that year, and
it would neither be just, nor sustained by rules of fair con-
struction, to hold that the county should lose the benefit
of the assessment of the stock, because of the delay in de-
ciding the appeal, or from delays in no manner attribu-
table to the fault of the County Commissioners. We there-
fore hold that this objection to the levy cannot be sup-
ported.

There is still another objection taken, and that is to the
form of the remedy adopted by the appellees for the re-
covery of the tax.

As we have already stated, the declaration proceeds as
for taxes levied upon the property of the corporation, and
therefore due from it, without reference to the assessment
and levy upon the shares of the individual stockholders.
The assessment of the tax was required to be upon the
shares of the stock belonging to individual stockholders
as such, and not as upon property belonging to the corpo-
ration, as in the case of the assessment of the real prop-
erty, which was properly assessed to the corporation. The
corporation, however, is required to pay the taxes assessed
upon the shares of stock, and when it shall have paid such
taxes, the same are directed to be charged to the account
of the respective stockholders by the corporation. The
corporation itself is under no duty or obligation to pay
the taxes assessed upon the shares of stock of the indi-
vidual stockholders, except as provided by the statute.
But the statute having created the duty and obligation to
pay, when the shares of stock are assessed to the indivi-
dual owners, that duty and obligation on the part of the
corporation may be enforced by a proper action at law,—
the plaintiff, in such case, showing the right claimed to be
within the provisions of the statute. 1 *Chit. Pl.*, 118, 119
and 125, (16*th Ed.*), and cases there cited. *Rann vs.
Green*, 2 *Cowp.*, 474, 476; *Tilson vs. Warwick Gas Light*

*Co.,* 4 *B. and Cr.,* 962. Here, however, there was no demurrer to the declaration, nor does it appear that there was any objection whatever taken in the Court below to the sufficiency of the pleading. The case was submitted to the Court on an agreed statement of facts, and upon such statement it was simply the duty of the Court to declare the law upon the facts thus admitted. It is true, it has been held by this Court that the provision of the statute which declares that in no case shall this Court decide any point or question which does not appear, by the record, to have been raised, or made in and decided by the Court below, does not apply to cases tried and determined upon an agreed statement of facts. *Keller vs. The State,* 12 *Md.,* 322. But it does not follow that where by the statement of facts, no reference is made to the pleading, and consequently no question in terms is raised thereon, that the judgment of the Court on such statement of facts necessarily involves, and must be taken to have been rendered upon a determination of the sufficiency of the pleading, as upon demurrer, or motion in arrest of judgment. No decision has declared such principle in practice, and we are not disposed to lay down any such principle. If parties desire to raise questions on the pleading, it must be done in some established mode, as by demurrer, motion in arrest, or by prayer that refers to and involves a consideration of the pleading. But on an agreed statement of facts, such as that filed in this case, the Court is confined to declaring the law arising upon the facts admitted, and is not called upon for judgment as to the sufficiency of the pleading. We shall therefore affirm the judgment.

*Judgment affirmed.*

(Decided 21st December, 1882.)