STREET RAILROAD COMPANY *v.* MORROW.

(*Nashville.*   February 28, 1889.)

1. TAXATION.   *Assessment.   Corporate franchises.*

Franchises of corporation are taxable property, and should be assessed, not separately, but with its tangible property.

Case cited and approved: Railroad *v.* Bate, 12 Lea, 573.

2. SAME.   *Same.   Right of way belonging to street railroad.*

Right of way acquired by street railroad over streets of city is an easement in, and assessable for taxation as, realty.

Case cited and approved: 90 Ill., 573.

3. SAME.   *Same.   Method of assessing street railroad.*

The proper method is to assess a street railroad as a whole, including, as elements of value, its franchise, right of way, iron rails, ties, spikes, etc.; but an assessment of its right of way and franchise, as a separate item from its other property, is not invalid.

4. SAME.   *Same.   Of omitted property.   Constitutional law.*

Statutes authorizing assessment, for taxation, of property omitted from the regular assessment are valid and constitutional.

Act construed: Acts 1887, Ch. 2, § 24.

Cases cited and approved: State *v.* Whitworth, 8 Lea, 594; Shelby County *v.* Railroad, 16 Lea, 401.

5. SAME.   *Same.   Upon under-valuation.   Constitutional law.*

Likewise statutes authorizing re-assessment of property assessed originally upon inadequate valuation are valid and constitutional.

Cases cited and approved: Railroad *v.* State, 8 Heis., 790; State *v.* Bank, 16 Lea, 114.

6. SAME.   *Same.   Payment of tax does not defeat re-assessment.*

Re-assessment is not defeated by payment of tax as originally assessed.

7. SAME.   *Of corporate property and shares of stock.*

A statute neither imposes double taxation nor violates the constitutional mandate that "all property shall be taxed according to value," which requires corporations to pay tax upon value of their property, and their stockholders also upon the value of their shares.

Constitution construed: Art. II., § 28.

Act construed: Acts 1887, Ch. 2, § 8.

Cases cited and approved: Union Bank *v.* State, 9 Yer., 490; McLaughlin *v.* Chadwell, 7 Heis., 389; Memphis *v.* Ensly, 6 Bax., 553; Gas Light Company *v.* Nashville, 8 Lea, 406; Street Railroad *v.* Nashville, MS. (1880); Farrington *v.* Tennessee, 95 U. S., 679.

Case cited and distinguished: Tennessee *v.* Whitworth, 117 U. S., 129.

8. SAME. *Same. Collection of tax on shares through the corporation.*

Statue is valid which requires the Corporation to retain and pay out of dividends due to its stockholders the tax assessed against them upon their shares. Such is the meaning of the Act of 1887, Ch. 2, §§ 8–12.

Act construed: Acts 1887, Ch. 2, §§ 8–12.

Cases cited and approved: Haight *v.* Railroad, 6 Wall., 15; Bank *v.* Commonwealth, 9 Wall., 363; 52 Penn. St., 140; 81 Ill., 556; 31 La., 826; 57 Md., 31; 57 Vt., 68; 43 Mo., 67; 59 Md., 197; 101 U. S., 156.

9. SAME. *Situs of shares. Non-residents.*

For purposes of taxation *situs* of shares of stock may be fixed by statute at place where corporation is located, even as against non-resident stockholders.

Act construed: Acts 1887, Ch. 2, § 8.

Cases cited and approved: Iron Company *v.* Young, 85 Tenn., 189; McLaughlin *v.* Chadwell, 7 Heis., 389; Bedford *v.* Nashville, 7 Heis., 409; Mayor *v.* Thomas, 5 Cold., 600; 1 Black., 286; 19 Wall., 390; 65 Ill., 44; 59 Md., 185; 57 Vt., 81; 35 N. Y., 423.

10. SAME. *Exemption.*

Burden is upon taxpayer to show that he is entitled to exemption of one thousand dollars out of assessment of omitted property or other merely ancillary assessment, there being a presumption that he received this exemption out of the original assessment.

11. SAME. *Bonds of corporation. Situs.*

Bonds of corporation are taxable property, and have their *situs*, for purposes of taxation, in the absence of any special provision affecting them, at place of bondholder's residence—not at place where corporation is situated.

This *situs* cannot be altered, by statute, as to *pre-existing bonds*, without violating obligation of contract.

12. SAME. *Same. Same. Non-resident bondholders.*

Non-resident bondholders are not taxable in this State upon bonds of our domestic corporations held and owned by them. Neither the bondholder nor this property is within the jurisdiction of the State.

---

Street Railroad Company *v.* Morrow.

The Act of 1887, Ch. 2, § 8, so far as it undertakes to impose such tax upon previously issued bonds, is invalid.

Act construed: Acts 1887, Ch. 2, § 8.

Cases cited and approved: 15 Wall., 319; 52 Penn. St., 140; 7 Hum., 121; 12 Iowa, 539; 25 Cal., 603; 11 Wall., 430; 106 Ill., 25; 27 Gratt., 344.

13. SAME. *Same. Same. Resident bondholders.*

Bondholders, resident in the State, are taxable, for county or city purposes, upon bonds of our domestic corporations held and owned by them only at place of bondholder's residence, not at place where corporation is located, if that be different.

The Act of 1887, Ch. 2, § 8, so far as it provides otherwise, is void.

Act construed: Acts 1887, Ch. 2, § 8.

14. SAME. *Same. Collection of tax on bonds through corporation.*

The Act of 1887, Ch. 2, §§ 8–12, so far as it undertakes to convert corporations into agencies for collection of taxes laid upon their bondholders, is so faulty, defective, and onerous to corporations, that it is impracticable and void.

Act construed: Act of 1887, Ch. 2, §§ 8–12.

Case cited and approved: 102 U. S., 684.

15. SAME. *Notice of assessment of omitted property.*

Notice to corporation is sufficient, under Act of 1887, Ch. 2, § 24, for assessment of shares of stock to their holders as omitted property, but not as to like assessment of bonds against the bondholders.

Act construed: Acts 1887, Ch. 2, § 24.

16. SAME. *Same. To unknown owners of bonds.*

Assessment, as omitted property, of the entire amount of a corporation's bonds, in a single item, to "unknown owners," without notice to any holders of the bonds, or their agents or representatives, is void. The corporation is not, for this purpose, to be deemed, under the Act of 1887, Ch. 2, § 24, the "agent" or "representative" of its bondholders.

Act construed: Acts 1887, Ch. 2, § 24.

17. SAME. *Bonds not treated as shares of stock.*

Bonds issued by an organized and going corporation to its stockholders, upon a merely colorable consideration, as a "bond dividend," and assessed as bonds for taxation are to be treated, in determining validity of assessment, as bonds and not as stock shares.

Street Railroad Company *v.* Morrow.

Case cited and distinguished: Iron and Steel Company *v.* Morrow, *ante,* p. 262.

18. SUPREME COURT. *Practice. Question not raised or decided below.*

Question not raised or decided in lower Court will not be considered by this Court, when the parties omitted it from their agreed statement of facts, which undertook to enumerate the questions they intended to submit for determination.

## FROM DAVIDSON.

Appeal in error from Circuit Court of Davidson County. W. K. McALISTER, J.

VERTREES & VERTREES and HILL & GRANBERRY for complainants.

Attorney-General PICKLE, MATT W. ALLEN, MOSES R. PRIEST, J. B. DANIEL, and T. M. STEGER for respondent.

LURTON, J. The plaintiff in error is a corporation, organized in 1859, under a charter granted by the Legislature of this State. As such corporation it obtained from the city of Nashville a right to lay down, maintain, and operate a line of street railway upon certain streets of that city. Under this charter and right of way granted by the city it has for many years been running a line of street cars.

In 1887 it was assessed by the regular assess-

ors for purposes of State and county taxation upon the following valuations: Real property, $10,000; personal property, $50,000. In 1888 it was assessed as follows: Mules, $3,600; cars, $2,500; real estate, $9,000; stockholders, $75,000.

By Section 24 of the Assessment Law of March 24, 1887, it is provided: "That if at any time after the assessments have been made, it should come to the knowledge of the Chairman or Judge of the County Court, or the Clerk of the County Court, the County Trustee, or Sheriff, that any person or corporation has not been assessed, or has been assessed upon an inadequate amount, that it shall be the duty of such officer, on motion of the Attorney-General, to cite said person, or corporation, their agent, or attorney, or representative, to appear before the Trustee for the purpose of being assessed according to law; 'and said Trustee is hereby authorized and empowered to make the proper assessment against such person, firm, or corporation; * * * and to cause the same to be entered on the tax books for collection.'" Acts of 1887, page 34.

Under this authority the defendant, who is the County Trustee for Davidson County, upon the motion of the Attorney-General, and upon notice to the said corporation, re-assessed the corporate property for both 1887 and 1888, and at the same time and upon the same notice — treating the corporation as the agent for and representative of the shareholders and bondholders of said company — he

assessed the shares of stock in said corporation to the individual shareholders by name, and the outstanding coupon bonds of the company to "unknown owners." By this re-assessment the valuation of the corporate property has been largely increased. The shares of stock and the bonds of the company, not having before been assessed, are assessed as omitted property.

The company denied the right of the County Trustee to increase the assessment for 1887, it having theretofore paid the tax assessed against it for that year. It denied the right of the Trustee to assess the shares of stock, or to assess its bonds in such manner as to compel the company to collect the tax thus assessed from its shareholders or bondholders, or to compel the company to pay such tax so assessed, or be liable for same. It likewise denied the liability of its bonds to assessment, and the legality of the assessment made. Both the shareholders and the company denied the right of the Trustee to assess both the company's property and the shares of capital stock, as being double taxation.

These, upon an agreed case, were made up to have the validity of the several assessments determined, and to have the Act of 1887 construed and its constitutionality considered, and the liability of the company, by reason of said assessments under the provisions of the Act, declared and ascertained. The parties to this agreed case are the company and its shareholders upon the one side, and the

County Trustee upon the other. The bondholders are unknown, and of course are not parties to this suit.

The agreed case was submitted to the Circuit Court of Davidson County, and all of the assessments were sustained as valid, except in so far as the franchises of the corporation had been, in the opinion of the learned Circuit Judge, assessed separately and independently of other property of the company. The action of the learned Circuit Judge is supported by an exceedingly able and exhaustive opinion, which, having been made a part of the record, has been of great service in reaching the conclusions we shall presently announce. That part of the assessment quashed by the Circuit Court will be first disposed of. The Assessor has undertaken to itemize the several properties of the company and to value them separately. The franchises of the company, *together with its easement in the streets of Nashville,* under the ordinances of said city and the contract between the city and the Street Railway Company, are assessed as of a valuation of $50,000. This assessment was quashed under the authority of the case of the *Railroad* v. *Bate,* 12 Lea, 573, as being a separate and independent assessment upon a mere franchise. We think this a misconception of the property included in the item valued at $50,000. The right of way in the streets of Nashville is an easement in realty and is assessable as realty. This is well settled. Desty on Taxation, Vol. I., 300, 405, 361, and 379.

In the case of the *Chicago City Railway Company* v. *the City of Chicago*, this question as to whether the easement of street railway Company in the streets of a city was assessable as property was determined in the affirmative. Concerning such an interest the Court said:

"It is true, as urged by counsel, that the railway company has not become the owner of any portion of the street in fee, but it has certainly, through its charter  *  *  *  and its contracts with the city, acquired a property in them of a most valuable character, which neither the Legislature nor the City can take away without the consent of the company, and capable like other property, of being sold and conveyed. The City has made a contract with the company by which it has granted to the latter what is substantially a lease-hold in a portion of its street for a number of years. It has acquired rights in the street which no other person or company nor the general public possess." 90 Ill., 573.

This easement in the streets, together with the franchises, are assessed as of a valuation of $50,000. It would have been better to have assessed these elements of value with the iron rails, ties, spikes, etc., as together constituting so much street railway. In the case of *Railroad* v. *Bate, supra*, we hold that an assessment upon a line of railway as a continuous line, without a separate and independent assessment upon its franchise as a corporation, was not error. This was sound law, and we ad-

here to it. But we do not think that case governs this. The franchise, to be a corporation, is property, and as such must be assessed; it ought, however, to be assessed with the tangible property of the company, and not separately. Here it has been assessed along with a valuable easement, an interest in realty, and we see no reason for quashing such an assessment as void.

The assessment of property, omitted from the assessment made by the regular Assessor, is expressly authorized by the Act of 1887. We have repeatedly sustained the validity of such assessments and the constitutionality of the Acts authorizing them. *State* v. *Whitworth*, 8 Lea, 594; *Shelby County* v. *Railroad*, 16 Lea, 401.

That part of the Act which authorizes an additional assessment when the original assessment has been upon an inadequate valuation, is not new legislation. The same provision was contained in the Act of 1873, and a re-assessment made of the property of the Louisville & Nashville Railroad Company was sustained by this Court as being authorized by that Act. *Louisville & Nashville Railroad* v. *State*, 8 Heis., 790. See also the case of *State* v. *Nashville Savings Bank*, 16 Lea, 114.

We do not see any constitutional objections to such legislation. The objection that the actual payment of the tax as originally assessed should preclude any further or additional assessment, does not go to the constitutionality of the Act. The objection is not of serious import in any view of

it. The reply of the Circuit Judge is complete in every aspect of the question. He said:

"The Constitution and laws prescribed that all property should be assessed according to its value, and if by the misfeasance, non-feasance, or mistake of the Assessor, it is not assessed according to its value, but upon an arbitrary basis fixed by the Assessor at far less than its value, why should the tax debtor escape simply because he has made payment? * * * It may be that such a law will work inconvenience and annoyance to the citizens, but all tax laws are odious and vexatious. It is said the citizen ought to know when he is through with the tax gatherer, but he will know when he has paid his taxes on his property according to its value. He will know then he is secure against reassessment and the law will protect him."

The next objection to be considered is, that the assessment of the corporate property and of the shares of stock is double taxation, and prohibited by that clause of the State Constitution which requires that "all property shall be taxed according to its value." Conceding that the effect of this provision is to prohibit double taxation, the first inquiry is as to what is double taxation. It is not every *indirect* duplication of a tax which constitutes double taxation. If the duplication be only an incidence of the tax it is not double taxation in the sense of the requirement that equality and uniformity shall be preserved. Taxes may be divided into two great classes, direct and indirect. A direct tax, as defined

by Mr. Mill, is "one demanded from the very person who it is intended or desired should pay it." A tax assessed as a direct tax, in the sense in which Mr. Mill uses the term, may nevertheless fall ultimately upon one other than the one desired to pay it. To illustrate, political economists are generally agreed that the greater part of a tax assessed against a landlord falls finally upon his tenant. So a tax upon mortgages upon land in the end proves to be a tax upon the borrower. In neither of these cases was it intended or desired that the burden of the tax should fall upon either the renter or borrower. Yet, although it may happen that the renter and the borrower have in other forms fully paid their due proportion of taxation, the unintended duplication of their burden will not make the tax which they have indirectly been compelled to pay double taxation. So there seems to be double taxation of the same property to two individuals where the purchaser of property on credit is taxed to its full value, while the seller is taxed to the same amount on the debt. Concerning all these incidences of taxation, Judge Cooley says: "Now whether there is injustice in the taxation in every instance in which it can be shown that an individual who has been directly taxed his due proportion is also compelled indirectly to contribute, is a question we have no occasion to consider. It is sufficient for our purposes to show that the decisions are nearly, if not quite, unanimous in holding that taxation is not invalid because of such

unequal results." * * * "There is a sense," he says further on, "however, in which duplicate taxation may be understood—and which we think is the proper sense—which would render it wholly inadmissable under any Constitution requiring equality and uniformity in taxation. By duplicate taxation in this sense is understood the requirement that one person, or any one subject of taxation, shall directly contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once." Cooley, Tax, 2d Ed., 220 and 225.

In this connection, and as illustrating what he deems double taxation, he cites the instance of a tax on a merchant's stock by value, and another tax for the same purpose and by the same authority, on the same stock as a part of his whole property. So he says, "the same may be said of a tax on the property of a corporation and also on the capital which is invested in the property; if the latter is taxed as property, this also is a duplicate taxation, and as much unequal as would be the taxation of a farmer's stock by value, when on the same basis it is taxed as a part of his general property. Where, for instance, the money paid in as capital of a manufacturing corporation has been invested in buildings and machinery, these are what then represent the capital, and to tax the capital as valuable property, distinct from that which represents it, would be to tax a mere shadow; and it would make the shadow stand for the substance in order that it might be

taxed, when the substance itself is taxed directly under its own proper designation." *Supra*, 226. It is clear, upon careful consideration, that in the paragraph just quoted, the eminent author is not speaking of a tax upon the shares in the hands of stockholders, but of the capital as property of the corporation and taxed to it as such. This is evident not only from the illustration he uses and which we have quoted, but in his chapter upon equality and uniformity of taxation, he says that "a tax on the shares of stockholders in a corporation is a different thing from a tax on the corporation itself, or its stock, and may be laid irrespective of any taxation of the corporation when no contract relations forbid." *Supra*, 231. For this proposition he cites a great number of cases. If the whole of the capital stock had been converted into property and a tax was laid upon the latter, it would be difficult to see what valuation could be put upon capital, considered apart from the property into which the capital had gone, and apart from the shares in the hands of stockholders. Capital stock, when so considered, would not have any thinkable substance or shape, and as such could hardly be valued for taxation without treating the property into which it had been converted as the element which gave it taxable value, and this would be to duplicate the latter as a taxable value. It was to the capital stock in the hands of the corporation that Judge Cooper referred, when, in the case of *McGowan* v. *Bank*, he said that, "as a

general rule the taxation of the capital stock of a corporation may protect its property in which the capital may be invested, and the taxation of the property may protect the capital stock, for the capital is usually the representative of the property of the corporation and the property the representative of the stock." 6 Lea, 705. Neither would be, under all circumstances, the representative of the whole of the other. All of the capital might not be converted into property, then something of value might remain for taxation as capital stock. So the property of a corporation might greatly exceed in value the whole of the capital, then a tax laid upon the latter might still leave an excess of property which might be taxed without imposing a double tax upon the capital stock. The tax in the case now being considered is laid upon the property of the corporation, and the capital stock in the hands of the corporation is, by express direction of the lawmaker, omitted from assessment. The shares of stock in the hands of the stockholders and as the individual property of the shareholders are taxed. Now, are these shares exempted by reason of the taxation laid upon the property of the company? It may be true that the tax upon the property of the corporation may ultimately fall upon the shareholders, but this is only so by indirection, and such a result is only an incidence of a tax laid upon this peculiar and anamolous species of property. It is no more double taxation than the instances already put of the final result of a tax upon rented

property or mortgaged land, or that upon property sold upon a credit where the debt is also taxed in the hands of the seller. That a tax upon the shares laid upon the owner, and a tax upon the corporate property, is not double taxation, has been settled law in this State for half a century. The opinions of our predecessors upon this subject are numerous, and the constitutionality of such taxation has been vindicated by reasonings so forcible and exhaustive that we cannot hope to add to their strength. *Union Bank* v. *State*, 9 Yerg., 490; *Mc-Laughlin* v. *Chadwell*, 7 Heis., 389; *City of Memphis* v. *Ensley* 6 Baxt., 553; *Gaslight Company* v. *Nashville*, 8 Lea, 406; *South Nashville Street R. R. Co.* v. *Nashville*, MS., Nashville, 1880. We have already seen the view taken by Judge Cooley upon this question, which he supports by opinions from a large majority of the States of this Union. The Supreme Court of the United States, in a number of opinions, has taken precisely the same view of this question. In the case of *Farrington* v. *Tennessee*, a case which went up from this State, Mr. Justice Swayne so clearly defines the distinction between the capital stock and the property in shares in the hands of stockholders, that we cannot refrain from quoting a paragraph from his opinion: " The capital stock," says the Judge, " and the shares of the capital stock, are distinct things." The capital stock is the money paid or authorized or required to be paid in as the basis of the business of the bank and the means of conducting its operations. It ·

represents whatever it may be invested in. If a large surplus be accumulated and laid by, that does not become a part of it. The amount authorized cannot be increased without proper legal authority. If there be losses which impair it, there can be no formal reduction without the like sanction. No power to increase or diminish it belongs inherently to the corporation. It is a trust fund held by the corporation as a trustee. It is subject to taxation like other property. If the bank fail, equity may lay hold of it, administer it, pay the debts, and give the residuum, if there be any, to the stockholders. If the corporation be dissolved by judgment of law, equity may interfere and perform the same functions." "The shares of the capital stock are usually represented by certificates. Every holder is a *cestui que trust* to the extent of his ownership. They are held and may be bought and sold and taxed like other property. Each share represents an aliquot part of the capital stock. But the holder cannot touch a dollar of the principal. He is entitled only to share in the dividends and profits. Upon the dissolution of the institution each shareholder is entitled to a proportionate share of the residuum after satisfying all liabilities. The leins of all creditors are prior to his. The corporation, though holding and owning the capital stock, cannot vote upon it. It is the right and duty of the shareholders to vote. They, in this way, give continuity to the life of the corporation, and may thus control and manage its operations.

The capital stock and the shares may both be taxed, and it is not double taxation. The bank may be required to pay the tax out of its corporate funds, or be authorized to deduct the amount paid for each stockholder out of his dividends." 95 U. S., 679.

The later case of *Tennessee* v. *Whitworth*, 117 U. S., 129, has been cited as in conflict with the Farrington case. There is no conflict between the cases as we understand them. The Whitworth case involved a claim of exemption from taxation by the shareholders, by virtue of the charter of the N. & C. R. R., which provided that the capital stock of the company should be forever exempt from taxation, and that the property of the company should be exempt for the period of twenty years, and no longer. The court held that the exemption of capital stock meant an exemption of the shares in the hands of the shareholders, this view being reached upon a construction of the words of the charter. Two distinct things were held to be exempted: the property of the corporation for twenty years and the capital stock forever. That the something was not meant by "capital stock" which had been exempted by other express words and for a shorter term. The distinction between capital stock in the hands of the corporation, and shares of stock in the hands of stockholders, was distinctly recognized, Chief Justice Waite saying: "It is no doubt true that the Legislature may make a difference, for the purpose of taxation, be-

tween capital stock in the hands of the corporation itself, and the shares of the same stock in the hands of the individual shareholders."

Counsel for plaintiff have urged that under Section 9 of the Assessment Act the president or manager of the associations or corporations referred to in said section is expressly required to pay the tax assessed against the shares of stock out of the corporate funds, and that therefore the tax is one assessed against the corporation, and hence double taxation. If the corporation were required to pay such tax, whether it had dividends due to the tax debtors or not, there might be something in this objection. Section 9 is taken from the Act of 1873. In the latter Act it was manifestly limited to private banking associations. The original section has added to it words which seemingly make parts of it apply to all corporations. Just what is meant by this section it is unnecessary to say, further than that it has no application, in our opinion, to domestic corporations. The liability cast upon such corporations by assessments upon stocks or bonds is defined by the other sections of the Act. By the eighth section it is provided that no tax shall be assessed upon the capital stock of corporations, but that they shall be taxed upon their property. It is also provided that the shares of stock and the bonds issued by such corporations shall be taxed "in the valuation of the personal property of such bondholders and stockholders in the assessment of State, county, and city taxes," at the

place where such corporation is located, whether such owner reside at such place or not. Section 10 requires each corporation to keep, subject to inspection, a correct list of such shareholders and bondholders, with their residences, and the amount of stock and bonds owned by each. By section 11 a lien is declared to exist upon the shares of stock and bonds assessed under this Act, and the collector authorized to institute attachment proceedings to collect the tax in certain cases. By the twelfth section it is provided "that it shall be the duty of the president or managing officer of every such bank or other corporation doing business in the State to retain so much of any dividend or interest belonging to such stockholder or bondholder as may be necessary to pay any and all taxes assessed in pursuance of this Act, until it shall be made to appear to such officers that said taxes have been paid." From these provisions it is most obvious that the tax is not to be assessed against the corporation but against the shareholders and bondholders individually. The last section cited impounds in the hands of the corporation any dividends or interest, or so much thereof as may be necessary, which may be due or which may thereafter become due, to such shareholder or bondholder, and by implication authorizes the corporation to pay out of the fund, so due to the tax debtor, the taxes assessed upon the stock or bonds held by such tax debtor in the corporation. The company is thereby made an agency of the taxing

power for the collection of the tax due from its shareholders or bondholders. It is under no obligation to pay the tax out of its own funds, being only required to reserve from dividends or interest a sufficiency to pay the particular tax. Clearly, if the corporation should, after such assessment, pay out to its shareholders any dividend without reserving for the payment of the tax, it would voluntarily make itself liable for the payment of the tax. This is the full limit and measure of the responsibility imposed upon such corporations by this Act. If the corporation is a non-dividend paying concern, and this condition is real and not colorable, this scheme, for the better collection of such a tax, will be wholly inoperative. Is this plan for the collection of the tax upon shares of stock liable to taxation subject to any constitutional objections? We see none. It is nothing more than a garnishment prevailing against the corporation to better secure the payment of the tax out of dividends due or to become due. No injustice is done the company. The plan looks to a cheap, speedy, and sure means of collecting a tax otherwise exceedingly difficult to either assess or collect. The shares are the things taxed. It matters not who may own them the dividends attach to and belong to the owner of the shares at the time they are declared; and out of these dividends the sum necessary to pay the tax must be reserved. Such methods of collection are not at all unusual or unique. "For the most part," says Judge Coo-

ley in his work on Taxation, "the taxes levied by the States are collected of the persons taxed or enforced against the property in respect to which they are imposed. In a few cases, however, in which no injustice could result from such a course, the State may reach the party by indirection and collect in the first instance from some one else, who in turn will become collector from the person on whom the tax is really imposed. The reason is that in such cases it is more convenient to the State, and perhaps makes more certain the collection; and it could be resorted to only when the case is such that injustice could result to no one. A case of this kind is where the tax is imposed on the dividends or other receipts of shareholders from the profits of corporations, or upon their shares, and the corporation is required to make the payment, which it would then deduct from the payments to be made to shareholders." Cooley, Tax, 2d Ed., 432. Indeed, much more rigorous and onerous statutes of this kind have been sustained in other States. The Federal Government collected an income tax from shareholders and bondholders in corporations by requiring its payment by the corporation in the first instance, and permitting the company subsequently to deduct same from dividends or interest afterward due. The Act was held valid. *Haight* v. *R. R.*, 6 Wall., 15. The State of Kentucky had a statute which required corporations to pay the tax assessed against the shareholders of banks, and in turn collect same from

the dividend next due such tax debtor. This Act was held valid by the Supreme Court of the United States, Mr. Justice Miller saying that "the mode under consideration is the one which Congress itself adopted in collecting its tax on dividends and on the income arising from bonds of corporations. It is the only mode which certainly, and without loss, secures the payment of the tax on all the shares, resident and non-resident, and it is the mode which experience has justified in the New England States as the most convenient and proper in regard to the numerous and wealthy corporations of those States." *National Bank* v. *Commonwealth*, 9 Wal., 363. An Ohio statute, very similar in its provisions to our own, was held valid and obligatory upon the corporations affected. *Cummings* v. *Bank*, 101 U. S., 156. Many other States have similar statutes, and constitutional objections have not been sustained as to the collection of the tax on shares. *Maltby* v. *Reading R. R.*, 52 Penn. St., 140; *Ottawa* v. *McCaleb*, 81 Ill., 556; *New Orleans* v. *Savings Bank*, 31 La., 826; *Baltimore* v. *City Passenger Co.*, 57 Md., 31; *St. Albans* v. *Car Co.*, 57 Vt., 68; *Lionberger* v. *Rouse*, 43 Mo., 67; *American Coal Co.* v. *Alleghany County*, 59 Md., 197.

The next question to be considered is as to the taxability in this State of shares of non-residents, it appearing that certain of the stockholders of this company reside in other States. Since the Act of 1869, the *situs* of stocks in domestic corporations has, for purposes of taxation, been fixed at

the place where the corporation was located. Shares of stock are an anomolous kind of personal property. The corporation itself being an artificial creation of the law, dwells only in law, in the State of its creation. *O. & M. R. R.* v. *Wheeler*, 1 Black., 286; *South Tredeger Iron Co.* v. *Young*, 1 Pick., 189. Its shares are only transferable on the books of the corporation. *Supra.* They only represent the interest the owner has in the dividends of a business carried on here by the officers of the company as the agents of the corporation, and protected by the laws of this State. In the event the corporation shall wind up, the shares represent the interest the stockholders may take in assets remaining after payment of debts. While the company is a going concern, its affairs are controlled and its management directed by vote of the shareholders. Shares are not debts of the corporation, as are its bonds or other obligations. The fiction that personal property has no *situs* but that of the owner will always yield whenever the actual fact is opposed to the fiction, and when the purposes of justice likewise demand that the actual *situs* shall be examined. Shares are a species of intangible personal property. They have no actual *situs* such as tangible personals may have. The *situs* of such an anomolous kind of intangible property may very well be fixed, for the purposes of taxation, at the place where the corporation has its *situs*. Such a *situs* is more nearly in accord with the fact than any other, and the location is in accord with reason

and the demands of justice. The validity of legislation, thus fixing the place of taxation, has been more than once vindicated by this court. *McLaughlin* v. *Chadwell*, 7 Heis., 389; *Mayor* v. *Thomas*, 5 Cold., 600; *Bedford* v. *Nashville*, 7 Heis., 409. Precisely similar legislation has been sustained by the Supreme Court of the United States and by the Supreme Courts of nearly every State in the Union. The constitutionality of such statutes is no longer open to controversy. *Tappan* v. *Merchants Bank*, 19 Wal., 390; *Munduter* v. *Smith*, 65 Ill., 44; *American Coal Co.* v. Alleghany, 59 Md., 185; *St. Albans* v. *Car Co.*, 57 Vt., 81; *People* v. *Tax Comm.*, 35 N. Y., 423. A question has been made upon the argument that each shareholder so assessed is entitled to an exemption of one thousand dollars, as provided by Article 2, Section 28, which exempts one thousand dollars' worth of personal property from taxation in the hands of each tax payer. This is an agreed case. No such question was submitted or ruled upon by the Circuit Court, and in this situation, no demand for exemption being made in the court below, we think the question is not raised on this record. But upon another ground the contention cannot be here sustained, and that is, that it does not appear that such of the shareholders as are entitled have not, in fact, been allowed this exemption by the regular assessor. He is presumed to have done his duty, and it devolves upon the tax payer, when he is assessed upon omitted property, or when the assessment is ancil-

lary to the principal assessment of the tax debtor, to show that he has not, at some other time or place, received such exemption.

The agreed case shows that in 1884 this company issued bonds to the amount of $132,000, secured by a mortgage on all of its property. These bonds were divided among its then shareholders. The only consideration seems to have been that the stockholders had, for several years, suffered all the profits to be expended in extending and improving the corporate property. Having thus voluntarily submitted to a deprivation of dividends, they regarded themselves as entitled to a "*bond dividend.*" The contention of the State and County, that because these bonds were issued without consideration, that, therefore, they are to be treated and taxed as an additional issue of stock, is unsound for many reasons. It might be enough to say that they have not been assessed as stock, but as bonds held by *unknown owners.* This is not like the case of the *Iron and Steel Co.* v. *Morrow,* decided at this term. This was an organized and going corporation, its capital stock all being paid up. The validity of such bonds, as they may affect creditors, is a question not before us on this record. It is enough, however, that the validity of the assessment, *as made,* is the only question which we can consider. These bonds were assessed as bonds to the amount $132,000 in the hands of "unknown owners." We are not to be understood as assenting to the validity of an assessment of a large

lot of bonds owned by many different owners as a block of $132,000 to "unknown owners." We waive the consideration of this question.

By Sections 8, 10, 11, and 12 of the Assessment Act under consideration, bonds issued by corporations are placed for purposes of taxation upon precisely the same footing as shares of stock. The tax *situs* of the bonds of such companies is fixed for purposes of State, county, and city taxation, at the place, county, or city where the corporation is located, regardless of the actual residences of the owners of such bonds. The corporation is made the agency of the State, county, and city, for the collection of the taxes assessed by the several governments, being required to reserve, from the interest due on the bonds, a sufficient fund to pay the tax assessed against each bondholder. The assessed bondholders, being unknown, are, of course, not parties to this proceeding. But inasmuch as a duty and a liability is imposed by the law upon the corporation owing these bonds, it very rightly insists that the law be construed, and its duty defined under the law, with reference to the tax thus assessed upon its bondholders.

That the officers of this company should not know who are now the owners of these bonds is not remarkable. The bonds bear coupons, and are negotiable, and have thirty years to run. Such bonds, when sold, require no transfer on the books of the company. The coupons mature every six months, and are payable at the American National Bank, and, as the agreed case shows, are paid by

the bank upon presentation out of funds of the
company placed there for that purpose. Some of
the bonds were originally owned by residents of
other States, and from the fact that coupons from
such bonds are sent to the bank for payment from
other States, it may be presumed that some of the
bonds are now owned by non-residents. Are bonds
owned by non-residents subject to taxation in this
State? In a case involving the power of a State
to tax bonds owned by non-residents, Mr. Justice
Field, in delivering the opinion of the court, said:
" The power of taxation, however vast in its char-
acter and searching in its extent, is necessarily
limited to subjects within the jurisdiction of the
State. These subjects are persons, property, and
business. Whatever form taxation may assume,
whether as duties, imposts, excises, or licenses, it
must relate to one of these subjects. It is not
possible to conceive of any other, though as applied
to them the taxation may be exercised in a great
variety of ways." * * * " It may touch business
in the almost infinite forms in which it is con-
ducted, in professions, in commerce, in manufactures,
and in transportation. Unless restrained by provisions
of the Federal Constitution, the power of the State
as to the mode, form, and extent of taxation, is
unlimited, where the subjects to which it applies are
within her jurisdiction." *"State Tax on Foreign-
held Bonds"* case, 15 Wal., 319.

"These," says Judge Cooley, in his able and ex-
haustive work on Taxation, " are conceded or ad-

Street Railroad Company *v.* Morrow.

judged principles, and have ceased to be the subject of discussion or argument." 22.

The power of the State must then rest upon the proposition that these bonds are constructively within the jurisdiction of the State, although their owners have no residence here. Where a non-resident is the owner of tangible property, real or personal, which has its *actual situs here*, there is no doubt but that the jurisdiction of the State over such property for purposes of taxation is complete. This is true notwithstanding the fiction of the law that personal property has no *situs* but that of the owner. In such case the fact that the *actual situs* of such personalty is here authorizes the taxation.

Says Judge Story: "The general doctrine is not controverted that although movables are for many purposes to be deemed to have no *situs*, except that of the domicile of the owner, yet this being but a legal fiction, it yields whenever it is necessary for the purposes of justice that the actual *situs* of the thing should be examined." Conflict of Laws, Section 500. Upon this ground the fiction as to the *situs* of personalty is overcome by an examination as to the actual *situs;* and the purposes of justice requiring that property, actually within the State and protected by the State, shall bear its just proportion of the expenses of government, renders its taxation legal and just. Cooley on Taxation, 2d Ed., 373, and cases cited by him.

The bonds sought to be taxed are undoubtedly property, and personal property. They are, how-

28

ever, intangible property, and can have no *actual
situs*. They are the mere evidence of debts by the
company to the holder or owner thereof. The bond
is evidence to support a demand for payment of
money. Its destruction by accident would not dis-
charge the debt. The debt would remain, and
might still be demanded and recovered. *Kirtland* v.
*Hotchkiss*, 100 U. S., 498. The bond is property,
but it is the property of the owner—the creditor
and not the debtor. It is not like shares of stock,
which are not a debt, but which represent the in-
terest owned by the stockholder in the profits of a
business conducted here by his agents. The owner
of the bond has no interest in the business of the
corporation, and no control over it whatever. The
losses of the business must be borne and its profits
shared by the stockholder. In all this the creditor,
by bond or otherwise, has no interest other than
that which every creditor has in seeing his debtor
preserve an ability to meet his debts. A tax upon
the bond is not a tax upon the corporation. It
is a tax upon the owner of the bond. Bonds are
undoubtedly subject to taxation. But where? By
what government? The answer cannot be doubtful.
They can only be taxed by the government having
jurisdiction of the owner. The *situs* of intangible
personals, such as bonds, notes, accounts, etc., is
necessarily the *situs* of the owner. This identical
question was decided in the case of the foreign-
held bonds already cited. The case arose under a
Pennsylvania statute similar to our own, by which

it was sought to tax, in Pennsylvania, bonds owned by non-residents, upon the ground that they had been issued by a Pennsylvania corporation, and were secured by a mortgage upon property situated in that State.

Discussing this question of the *situs* of such bonds the court said: "Corporations may be taxed, like natural persons, upon their property and business; but debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditor. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors to whom they are payable, and follows their domicile, wherever that may be. These debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no form of expression, could add any thing to its obvious truth." 15 Wal., 320. That these debts are secured by a mortgage upon property situated here can make no difference. The Supreme Court of Pennsylvania had sustained such taxation upon the ground that the *situs* of the security gave the State jurisdiction. *Malby* v. *Reading R. R.*, 52 Penn. St., 140. But this theory was repudiated, and its un-

soundness demonstrated, in the case just cited from
15 Wal.

Upon this the court said: "The property mort-
gaged belonged entirely to the company, and, so
far as it was situated in Pennsylvania, was taxable
there. If taxation is the correlative of protection,
the taxes which it there paid were the correlative
for the protection which it there received. And
neither the taxation of the property, nor its pro-
tection, was augmented or diminished by the fact
that the corporation was in debt, or free from debt.
The property in no sense belonged to the non-
resident bondholder, or to the mortgagee of the
company. The mortgage transferred no title, it
created only a lien upon the property. Though in
form a conveyance, it was both at law and in equity
a mere security for the debt." 15 Wal., 322.

In this State, as in Pennsylvania, the mortgagee's
interest in the mortgaged land is but a security
for the debt—the debt being the principal and the
land only an incident. *McGann* v. *Marshal*, 7
Hum., 121.

In Iowa, it was held that mortgages held by
non-residents on property in that State were not
subject to taxation in Iowa. *Davenport* v. *Railroad*,
12 Iowa, 539. So in California it was held that
the owner of a judgment of foreclosure of a mort-
gage on lands could not be taxed in the county
where the mortgaged lands were, he being a citi-
zen of another county in the State. The debt be-
ing held to have only the *situs* of the owner, the

mortgage being a mere security. *People* v. *Eastman,* 25 Cal., 603.

That the legal fiction as to the *situs* of personals will, under certain circumstances, yield is most true. If the State had in the charter of this company authorized the issuance of bonds only upon condition that they should be taxable here, and this provision had been contained in the bonds and coupons, it could not be doubted that each purchaser would take such bonds with notice, and would by contract subject himself to taxation here. In such a case the purchaser would undoubtly take this burden into consideration when he bought, and abate his price accordingly, and thus the tax would, as an incidence of such taxation, fall at last upon the debtor.

The fiction that debts have no *situs* but that of the creditor is founded upon a consideration of the nature of such property. It is not property save in the hands of the creditor.

"It is a certain rule," says Lord Mausfield, "that a fiction of law · shall never be contradicted so as to defeat the end for which it was invented, but for · every other it may be contradicted." Cowp., 177. "No fiction," says Sir Wm. Blackstone, "shall extend to work ·an injury, its proper operation being to prevent a mischief or remedy an inconvenience which might result from the general rule of law." 3 Comm., 43.

To sustain the jurisdiction of the State over these bonds for purposes of taxation we must ignore or

contradict the legal fiction which ascribes to such property the *situs* of the owner. If the actual *situs* upon examination should prove to be here, then the legal fiction must yield. But the actual *situs* is not here, and to sustain the jurisdiction we must create a fictitious or constructive *situs*, based upon the notion that debts are in some way property in the hands of the debtor, or that the security for the debt being here, that, therefore, the debt is here. By no sort of fiction can the jurisdiction of the State be held to extend to the property which a non-resident has in a debt which he holds against a resident. The creditor cannot be taxed because he is not within the jurisdiction, and his property cannot be taxed because it is not within the jurisdiction. *State Tax on Foreign-held Bonds*, 15 Wall., 300; *St. Louis* v. *Ferry Co*, 11 Wall., 430; *Hoyt* v. *Tax Comm.*, 23 N. Y.; *Goldfast* v. *People*, 106 Ill., 25; *Commonwealth* v. *C. & O. R. R.*, 27 Gratt., 344.

Another question arises. The holders of such bonds are required to be assessed for county taxation and for city taxation at the place where the corporation is located. Now, may a citizen and resident of a county, other than that of the location of the corporation, be assessed for county taxation by a county in which he does not reside and in which he has no property? The same jurisdictional defect which prevents the State from assessing bonds of non-residents of the State exists with reference to the county. Davidson County has as-

sessed all the bonds issued by this corporation. This Act authorizes it. Can the Legislature authorize a county to assess, for county purposes, property not within the county? Is the Act valid in so far as it authorizes either the county or the city of Nashville to assess bonds owned by non-residents of the county or city? We have already decided that the *situs* of debts is that of the creditor and not that of the debtor. The Constitution authorizes the Legislature to empower counties and towns to assess taxes. This power has two limitations. The taxation must be applied to subjects within the jurisdiction of the county or the city, and it must be exercised only for county or municipal purposes. The State cannot empower a county or city to tax property not within the jurisdiction. The injustice which would result if it were otherwise would be most obvious. If Davidson County could tax the property of a resident of another county just because that property happened to be a debt due by a resident of that county, it would be a gross injustice. This consideration makes the conclusion we have reached upon constitutional grounds accord with every sense of right and justice. There are two other infirmities which attach to this part of this Act. The first is that the tax is imposed upon the holder of the bond. The corporation is required to reserve the tax from interest due. The bonds are coupon bonds and run for thirty years. Such coupons may be detached and are negotiable. If the coupon should be owned by

.A and the bond by B, the deduction of the tax from
the coupon would be to compel A to pay the tax
of B. This precise question arose and was deter-
mined in the case of *Hartman* v. *Greenbow*, when
it was held that the tax against the bond was not
collectable from the interest where it appeared that
the coupon belonged to one and the bond to an-
other. 102 U. S., 684. The second infirmity is
this, the tax against non-residents of the State is
void in toto. The tax of Davidson County upon
bonds not owned in the county is void. The tax
of the city of Nashville upon bonds not owned in
the city is void. Now, when a coupon is presented
for payment how is the company to determine
whether it may lawfully reserve the tax from its
interest payment? If the coupon does not belong
to the owner of the taxed bond, it cannot reserve
the tax. If it does not belong to a resident of the
State it cannot reserve any tax. If it does not be-
long to a resident of Nashville it cannot reserve
the city tax. If it does not belong to a resident of
the county it cannot reserve either the county or
city tax. The burden imposed by the Act upon
the corporation, with respect to the collection of
the tax lawfully assessed, is too onerous, and threat-
ens grave injustice. It would have no way to secure
itself against liability to either the bondholder whose
interest it has illegally detained, or to the State
for failure to reserve the tax justly due, except by
requiring every coupon to be sued upon.

The whole scheme of the Act, in so far as it

undertakes to convert corporations into agencies for the collection of a tax upon their bondholders, is fatally defective and void. The Act is not limited to collection of State tax alone, but undertakes to provide machinery for collection of county and city taxes as well. The Act is so faulty as a scheme for collecting the tax on bonds that it cannot be sustained.

We therefore hold the Act invalid in so far as it impounds interest due by corporations, or imposes on them any duty or liability on account of the tax assessed upon their bonds.

Other objections to the validity of the Act in this particular have been argued, but it is unnecessary to pass upon them. The assessment against unknown holders of bonds is void. The assessment was made, as we have before stated, under the provisions of the law authorizing assessment of *omitted property*. The Act requires notice to be given to the tax payer, his attorney, agent, or representative. Notice was given to the corporation as the agent of the bondholder. Under the view we have taken of the Act the corporation is not the agent or representative of the bondholders, hence the assessment of these bonds as omitted property is void.

The judgment of the Circuit Court will be reversed in this matter, and as to the assessment on franchise or right of way, and affirmed in other particulars.

Costs will be divided as indicated by the Circuit Court.